No. 24-11347

In the

# United States Court of Appeals
## for the Eleventh Circuit

EDIBLE IP, LLC, ET AL.

*Plaintiff-Appellants,*

v.

1-800-FLOWERS.COM, INC., ET AL.

*Defendant-Appellees.*

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 20-CV-02405-VMC — Hon. Victoria M. Calvert, *Judge*

## EDIBLE APPELLANTS' OPENING BRIEF

Jason S. Alloy
Jeremy U. Littlefield
Edward A. Bedard
ROBBINS ALLOY BELINFANTE
  LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T:(678) 701-9381

*Counsel for Appellants
Edible IP, LLC and
Edible Arrangements, LLC*

*Edible IP, LLC et al. v. 1-800-Flowers.com, Inc., et al.*
No. 24-11347

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Plaintiff-Appellants Edible IP, LLC and Edible Arrangements, LLC (collectively, "Edible") hereby certify that the below is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. 1-800-Flowers.com, Inc. NYSE: FLWS. Appellee.

2. 800-Flowers, Inc. Appellee.

3. Alloy, Jason S. Counsel for Edible.

4. Altman, Solesse L. Former counsel for Edible.

5. BALLARD SPAHR LLP. Former counsel for Edible.

6. Bedard, Edward A. Counsel for Edible.

7. Beeney, Eliza. Former counsel for Edible.

8. Brewster, William H. Counsel for Appellees 1-800-Flowers.com, Inc. and 800-Flowers, Inc. (collectively, "18F").

9. Bondurant Mixson & Ellmore LLP. Former counsel for Edible.

10. Calvert, Hon. Victoria M. Judge in the underlying case.

11. Carter, Jason J. Former counsel for Edible.

12. Chanin, Erica C. Counsel for 18F.

13. Charnes, Adam H. Counsel for 18F.

14. Edible Brands, LLC. Corporate parent for Appellants. Edible

*Edible IP, LLC et al. v. 1-800-Flowers.com, Inc., et al.*

No. 24-11347

Brands, LLC is a privately held limited liability company.

15. Edible IP, LLC. Appellant. Edible IP, LLC is a privately owned company, and there is no publicly held company owning 10% or more of its membership interest.

16. Edible Arrangements, LLC. Appellant. Edible Arrangements, LLC is a privately owned company, and there is no publicly held company owning 10% or more of its membership interest.

17. Farid, Tariq. Farid is a Georgia resident owning more than 10% of the stock of TKF Holdings, Inc.

18. Fehlan, Kirsten. Former counsel for Edible.

19. Gubernick, Carly. Former counsel for Edible.

20. Hoffner, Kaylee E. Former counsel for Edible.

21. Hooker III, Charles H. Counsel for 18F.

22. Johnson, Grant L. Former counsel for Edible.

23. Jones, Hon. Steve C. Former judge in underlying case.

24. Kilpatrick Townsend & Stockton LLP. Counsel for 18F.

25. Littlefield, Jeremy U. Counsel for Edible.

26. Mahafey Pickens Tucker, LLP. Former counsel for Edible.

27. Matich IV, Nicholas T. Former counsel for Edible.

28. McKool Smith. Former counsel for Edible.

29. Miller, Richard W. Former counsel for Edible.

30. Powell, Judith A. Counsel for 18F.

*Edible IP, LLC et al. v. 1-800-Flowers.com, Inc., et al.*
No. 24-11347

31.    Robbins Alloy Belinfante Littlefield, LLC. Counsel for Edible.

32.    Rzonca, Lynn E. Former counsel for Edible.

33.    Simler, Benjamin N. Former counsel for Edible.

34.    Sivakumar, Madhundra. Former counsel for Edible.

35.    Stancil, Andrew D. Former counsel for Edible.

36.    Tate, Emily B. Former counsel for Edible.

37.    TKF Holdings, Inc. is a privately held corporation that owns
       more than 10% of the membership interests of Edible Brands,
       LLC.

38.    Wright, Briggs M. Counsel for 18F.

    Respectfully submitted this 9th day of September, 2024,

                            */s/Jason S. Alloy*
                            Jason S. Alloy

                            *Counsel for Appellants*
                            *Edible IP, LLC and*
                            *Edible Arrangements, LLC*

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a question of whether a retrospective contractual release and the doctrine of claim preclusion bar Edible's claims against 18F for post-settlement infringements on Edible's marks because that infringing behavior is the same type of conduct that was at issue in previous litigation between the parties. Edible believes oral argument would facilitate the Court's consideration of these issues. Accordingly, Edible respectfully requests oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................. 1

Statement Regarding Oral Argument ....................................... i

Table of Authorities................................................................iv

Jurisdiction........................................................................ vi

Statement of Issues ............................................................. 1

Introduction ...................................................................... 2

Statement of the Case .......................................................... 4

    I.   Tariq Farid creates and establishes the famous "Edible Arrangements®" brand and business............................................. 4

    II.  18F uses Edible's Marks through "keyword bidding" to place its search-engine advertisements...................................... 6

    III. The parties settle the 2014 Litigation related to 18F's use of Edible's marks to place its search-engine advertisements. .............................................................. 7

    IV. Edible brings this lawsuit for post-settlement keyword-bidding infringements and breaches of the Settlement Agreement. ................................................................. 10

    V.  Relevant proceedings in the district court below. ....................... 11

    VI. Standard of review. ................................................... 15

Summary of the Argument .................................................. 15

Argument........................................................................ 17

    I.   Neither claim preclusion nor the Settlement Agreement bar Edible's claims based on 18F's post-settlement conduct............ 17

        A.  Claim preclusion and the Release bar only "causes of action" which "were or could have been brought" during prior litigation. ................................................... 17

B.    18F's post-settlement keyword bidding gives rise to independent causes of action that did not exist as of the 2014 Litigation. .................................................................21

II.   The district court erred by granting summary judgment without addressing Edible's breach of contract claim. ...............28

Conclusion ...........................................................................................30

Certificate of Compliance ..........................................................................1

# TABLE OF AUTHORITIES

## Cases

*Baker v. TDCJ-CID*, 774 F. App'x 198 (5th Cir. 2019) ...........................29

*Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151 (S.D. Tex. 2016) ...................................................................................................22

*Carey v. Houston Oral Surgeons, LLC*, 265 Ga. App. 812 (2004) .........19

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc.*, 411 F. Supp. 3d 905 (N.D. Cal. 2019) .........................................26

*I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, 803 F. App'x 540 (2d Cir. 2020) ......................................................................................29

*In re Atlanta Retail, Inc.*, 456 F.3d 1277 (11th Cir. 2006) .....................21

*In re Managed Care*, 756 F.3d 1222 (11th Cir. 2014) ......................26, 27

*Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir. 2010)...............15

*Lawlor v. Nat'l Screen Serv. Corp.*, 211 F.2d 934 (3d Cir. 1954) ..........24

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405 (2020)..................................................... 17, 18, 21, 24, 26

*Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369 (11th Cir. 2011)........15, 18

*Marcel Fashions Grp. Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102 (2d Cir. 2015) .........................................................22, 25

*Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352 (11th Cir. 2008) ....................................................................................15

*Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883 (5th Cir. 2016) ....................................................................................25

*Sanders v. Rose,* 808 F. App'x 102 (3d Cir. 2020) ..................................29

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493 (2d Cir. 2014) ..........25

*Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292 (2016) ...............18

## Statutes

15 U.S.C. § 1114 ....................................................................... vi, 22

15 U.S.C. § 1121 ............................................................................. vi

15 U.S.C. § 1125 ............................................................................. vi

28 U.S.C. § 1291 ............................................................................. vi

28 U.S.C. § 1331 ............................................................................. vi

28 U.S.C. § 1338 ............................................................................. vi

28 U.S.C. § 1367 ............................................................................. vi

## Rules

Fed. R. Civ. P. 56 ..................................................................... 16, 29

## Treatises

18 Charles Alan Wright & Arthur R. Miller, Federal Practice &
    Procedure § 4409 (3d ed. 2008) ........................................... 26

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair
    Competition* § 32:81 (5th ed. 2024) ..................................... 26

## JURISDICTION

The district court had jurisdiction over this case under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 because Edible asserts claims of trademark infringement, false designation of origin, and dilution arising under 15 U.S.C. §§ 1114, 1125(a), and 1125(c). The district court had supplemental jurisdiction over Edible's state law claims pursuant to 28 U.S.C. § 1367(a).

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a final order granting summary judgment in 18F's favor on all of Edible's claims issued on March 19, 2024. Edible timely filed a notice of appeal on April 18, 2024.

## STATEMENT OF ISSUES

1. The parties settled a previous trademark-infringement lawsuit over 18F's use of Edible's mark to place its online search-engine advertisements. After 18F resumed its conduct, Edible filed new infringement claims based only on 18F's post-settlement use of Edible's marks. Could these new claims have been asserted in the previous litigation so as to be barred by *res judicata* or a contractual release?

2. Whether the trial court erred by granting a summary judgment on Edible's breach of contract claim without articulating the reasons for doing so.

## INTRODUCTION

Plaintiff-Appellants Edible IP, LLC and Edible Arrangements, LLC (collectively, "Edible") brought this litigation against Defendant-Appellees 1-800Flowers.com, Inc. and 800-Flowers, Inc. (collectively, "18F")—some of Edible's fiercest competitors in the marketplace of fresh-fruit and dipped-fruit products—to remedy 18F's ongoing infringement of Edible's trademarks. Of particular importance to this appeal, 18F has been infringing on Edible's marks through the practice of "keyword bidding," *i.e.*, purchasing Edible's marks as keywords from search-engine companies like Google and Bing and using them to place 18F's own advertisements prominently in the search results. In the span of just six years, 18F spent millions of dollars to serve over 100 million advertisements using Edible's marks. 18F's conduct has harmed Edible not only by weaking its marks, blurring their distinctiveness in the marketplace, and causing both likely and actual confusion among consumers.

After nearly four years of contentious litigation, the district court granted summary judgment in 18F's favor on all of Edible's claims. It did so for one simple reason—one which the previous judge in the same case had rejected at the motion to dismiss stage. The district court held that 18F's use of Edible's marks to place its own advertisements was a "continuation of the same [keyword-bidding] conduct at issue" in prior litigation between Edible and 18F. And by releasing any claims that

"were asserted or could have been asserted" in that litigation, the district court found that Edible's claims for 18F's *post-settlement* conduct were barred by the parties' settlement agreement and by claim preclusion. The trial court erred in two ways.

*First*, neither the release nor claim preclusion are applicable here because Edible's claims are limited only to 18F's *post*-settlement conduct. The fact that this is the same *type* of infringing conduct at issue in the previous litigation between the parties is irrelevant. The Lanham Act, which provides the basis for Edible's keyword-bidding claims, proscribes *acts* of infringement, not "courses of conduct." New infringing acts allow for new infringement claims. The conclusion of one infringement claim does not give a competitor a perpetual license to continue their infringement. Because Edible's claims here involve different *acts* of infringement from those at issue in the previous litigation—*i.e.*, pre-settlement acts v. post-settlement acts—Edible's post-settlement claims do not involve the same "cause of action" as the previous litigation, nor could they have been brought in that litigation. Therefore, neither claim preclusion nor the release bar Edible's claims in this case.

*Second*, the district court erred by disposing of Edible's independent breach of contract claim without articulating the reasons why it did so, in violation of Rule 56, and by doing so *sua sponte* without giving Edible a proper opportunity to respond. And if, alternatively, the

– 3 –

district court granted summary judgment on that claim for the same reasons as Edible's keyword-bidding claims, then that too is error. Edible's contract claim alleges that 18F breached the settlement agreement from their prior litigation, a claim that is clearly not barred by either that same agreement's retrospective release or the doctrine of claim preclusion.

Accordingly, the trial court's summary judgment order must be reversed, and the case remanded for further proceedings.

## STATEMENT OF THE CASE

### I. Tariq Farid creates and establishes the famous "Edible Arrangements®" brand and business.

Edible is a franchisor of stores operated throughout the United States and abroad operating under the brand name "Edible Arrangements®" which offer fresh-cut fruit products and other non-fruit gifts. ECF 94-1 ¶¶ 12–13.[1] The Edible Arrangements brand is best known for its fresh-fruit and dipped-fruit products, often arranged in floral designs. *Id.*

Tariq Farid founded Edible Arrangements in a classic American success story. *Id.* ¶ 14. An émigré from Pakistan when he was only twelve years old, Farid purchased his first flower shop by the time he

---

[1] Pursuant to Fed. R. App. P. 28-5, references to the record shall be to the docket and page numbers assigned by the district court, unless otherwise noted.

was sixteen. *Id.* After growing his flower business to four locations, he had his entrepreneurial breakthrough: floral arrangements made from fresh-cut fruit instead of flowers. *Id.* ¶¶ 14–15. And in 1999, Farid opened the first Edible Arrangements store in which he introduced his unique cut-fruit products. *Id.* ¶ 16.

The Edible Arrangements business was an immediate success. Only two years after opening his first store, Farid introduced Edible Arrangements franchises. *Id.* ¶ 17. By 2006, Edible Arrangements had expanded to 500 franchises, and by 2011 there were 1,000. *Id.* ¶ 18. Today, there are almost 1,200 Edible Arrangements stores worldwide, and Edible Arrangements' system-wide revenue exceeds half-a-billion dollars annually. *Id.* ¶¶ 18, 20.

Edible Arrangements' success is a direct result not only of its commitment to quality and design, but also to its marketing and promotion of the famous "Edible Arrangements®" brand. In order to protect that brand, and the consumer goodwill associated with it, Edible has registered a family of trademarks and service marks comprising or containing the terms "Edible" or "Edible Arrangements," either alone or with other words and/or designs (collectively, "Edible's Marks"). *Id.* ¶¶ 24–27. These marks are readily recognized by the general consuming public and serve as the banner of quality that identifies and distinguishes Edible Arrangements' goods and services in the marketplace. *Id.* ¶ 28.

## II. 18F uses Edible's Marks through "keyword bidding" to place its search-engine advertisements.

18F and its subsidiary brands—*e.g.*, Harry and David, Shari's Berries, Wolferman's Bakery, etc.—are floral and gift retailers. *Id.* ¶ 39. Seeing Edible's success, 18F and its subsidiaries elected to enter the market for cut-fruit arrangements and directly compete with Edible. *Id.* ¶ 42. In doing so, Edible asserts 18F began infringing on multiple aspects of Edible's intellectual property in order to advance 18F's own interests using the goodwill and reputation Edible had spent much time, money, and effort cultivating. Among these infringing acts was 18F's misappropriation of Edible's marks through a practice known as "keyword bidding."

In layman's terms, keyword bidding is a marketing practice in which businesses purchase certain keywords (*i.e.*, search terms) from search-engine companies like Google and Bing in order to ensure their websites or products feature prominently in search results. These search engines allow a company to bid for keywords it expects a customer might enter when looking for the types of goods or services the retailer offers. For example, the National Football League might bid on the term "football," or Ford might bid on "car." When the user enters those keywords, the winning bidder's website then appears in a prime position in the searcher's results page. Given the importance of high rankings and visibility in search-engine results in today's internet-

based marketplace, strategies like this can be enormously effective in driving customer traffic to a company's website.

But keyword bidding's efficacy also means it has the potential to cause significant consumer confusion, as 18F has done here. Beyond bidding on purely generic terms, 18F also bids directly on Edible's Marks as keywords to trigger advertisements for its own brands like Harry & David and 1-800-Flowers. *E.g.*, *id.* ¶ 63; ECF 323-3 at 6–13, 15. This means that when a consumer searches for "Edible Arrangements," for example, a link to 1-800-Flowers.com or FruitBouquets.com—both 18F brands—might be a top search result. This causes significant confusion among consumers, who unwittingly visit 18F's websites while looking to purchase from Edible Arrangements.

### III. The parties settle the 2014 Litigation related to 18F's use of Edible's marks to place its search-engine advertisements.

In 2014, Edible filed suit against 18F in the United States District Court for the District of Connecticut (the "2014 Litigation") alleging (among other things) that 18F infringed on Edible's trademarks by "improperly using Edible Arrangements' EDIBLE ARRANGEMENTS mark in the keyword advertising associated with" 18F and its then-existing subsidiaries. *See* Am. Compl., *Edible Arrangements Int'l, LLC and Edible Arrangements, LLC v. 1-800- Flowers.com, Inc. & 800-Flowers.com, Inc.*, No. 3:14-cv-01744 (D. Conn.). The parties eventually settled that litigation—and other related actions—in a 2016 settlement

agreement (the "Settlement Agreement"). ECF 17-2.[2]

**The Release.** As part of the Settlement Agreement, 18F agreed not to use the "term comprising or containing EDIBLE, EDIBLE ARRANGEMENTS, DO FRUIT or any other terms confusingly similar thereto in connection with" the sale or advertisement of any of 18F's products. ECF 17-2 § 3. This restriction, however, explicitly *excluded* 18F's keyword-bidding practices, which—as explained further below—was reserved for a potential future agreement. *Id.*

Partly in exchange for that restriction, the parties agreed to release one another from any:

> claims, liabilities, causes of action, and suits … which the Party now has, has had, or may hereafter claim to have had by reason of any matter, act, omission, cause, or event whatsoever arising out of any facts and matters occurring prior to the execution of this Agreement that were asserted or could have been asserted in the [2014 Litigation].

*Id.* § 14 (the "Release").

**Keyword bidding in the 2016 Settlement.** As mentioned above, the Settlement Agreement explicitly states that its general restriction on 18F's use of Edible's marks "does not apply to the bidding on, purchase or use of keywords to trigger online advertising" by 18F.

---

[2] The Settlement Agreement was later amended. *See* ECF 323-5. Those amended terms, however, are irrelevant to the issues raised in this appeal. Thus, for purposes of this brief, Edible cites to the relevant provisions of the original Settlement Agreement.

*Id.* § 3. Instead, the Settlement Agreement addressed keyword bidding in a separate paragraph, in which 18F agreed to:

> Seek approval from the Federal Trade Commission ('FTC') to *enter into an agreement* wherein [18F] shall hereby agree not to bid on, purchase or use any keywords comprising the terms EDIBLE, EDIBLE ARRANGEMENTS and/or DO FRUIT in connection with the offering, provision, advertisement, promotion, marketing, manufacture, sale, or distribution of [18F's] goods or services[.] …

> If the FTC does not approve such request, *this paragraph shall be null and void and shall have no force or effect.*

*Id.* § 5 (emphasis added). 18F claims that it complied with its obligations under this provision and that the FTC rejected its request. ECF 323-2 at 12–16 Assuming that is true,[3] the keyword-bidding paragraph thus became "null and void" and had "no force or effect."

**Dismissal of the 2014 Litigation.** In light of and pursuant to the Settlement Agreement, the parties stipulated to a dismissal of Edible's claims with prejudice on August 16, 2016 without reaching the merits of the claim.

---

[3] The parties dispute whether admissible evidence supports 18F's claim that it actually requested approval from the FTC to enter into a keyword-bidding agreement, or that the FTC actually rejected such a request. ECF 323-1 at 15 n.3. But even assuming 18F's position is true, it would not change the scope of the Release. Thus, the dispute is irrelevant for purposes of this appeal.

### IV. Edible brings this lawsuit for post-settlement keyword-bidding infringements and breaches of the Settlement Agreement.

In 2019, 18F acquired the Shari's Berries brand, which sells fruit-based products that compete directly with products sold by Edible. After this acquisition, 18F began aggressively using Edible's Marks in their internet advertising, including for products sold under the Shari's Berries brand with the deliberate intention of directing consumers and business away from Edible. ECF 94-1 ¶ 53; ECF 323-3 at 6–11. This included both keyword bidding and the use of Edible's Marks in its actual search-engine advertisements as a description of its goods offered. *E.g.*, ECF 94-1 ¶ 65.

18F's use of Edible's Marks caused significant confusion among consumers. As Edible alleged in its original complaint in this case—and as evidence later supported through discovery—there were multiple instances of consumers contacting Edible Arrangements regarding products they believed they had purchased from Edible Arrangements but which they had actually purchased from 18F or one of its subsidiaries after seeing 18F's search-engine advertisements. *Id.* ¶¶ 67–70. 18F's use of Edible's Marks was therefore causing actual confusion among consumers, directing business away from Edible, and diluting the distinctiveness of Edible's marks. As a result, Edible filed this lawsuit in June 2020, alleging various claims for trademark infringement and breach of the Settlement Agreement.

## V. Relevant proceedings in the district court below.

**18F's motion to dismiss.** In response to Edible's original complaint, 18F filed a motion to dismiss Edible's claims to the extent that they were predicated on 18F's keyword-bidding practices,[4] arguing that they were barred by claim preclusion and the Release—the same arguments it would eventually assert in its motion for summary judgment. ECF 16.

On March 10, 2021, Judge Steven C. Jones—the original trial judge assigned to this case—granted 18F's motion, finding that Edible's keyword-bidding claims as alleged in the complaint were barred by *res judicata*. Importantly, however, Judge Jones did so only because the original complaint did not specifically allege any post-2014 Litigation conduct. ECF 39 at 12. In his dismissal order, Judge Jones "agree[d] that *res judicata* cannot 'extinguish claims which did not even then exist and which could not possibly have been sued upon in the previous case,' and thus, one course of conduct may give rise to a new cause of action." *Id.* at 12–13 (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). But the problem with the original complaint, as Judge Jones saw it, was that it "[did] not attach any dates to its

---

[4] 18F recognized that Edible's breach of contract claim was not covered by 18F's claim preclusion and Release arguments because it separately moved to dismiss that count for failing to satisfy a pre-suit demand requirement or alternatively for a more definite statement. ECF 16

allegations of 18F's keyword search purchases." *Id.* at 12–14.[5]

**Edible's amended complaint.** In response to Judge Jones's order, Edible moved for leave to file an amended complaint. ECF 40. Edible's proposed amended complaint added numerous new allegations about post-2014 Litigation, post-Release changes in the marketplace and new conduct by 18F. ECF 41-3 (proposed First Amended Complaint redline). Moreover, Edible specifically alleged that it was only asserting claims for 18F's conduct "that began after the 2016 Settlement Agreement." *Id.* ¶ 71.

18F opposed Edible's motion for leave, arguing that the amended complaint would be futile because the conduct would still be barred by *res judicata* and the Release—the same argument 18F made in its motion to dismiss and that it would eventually advance on summary judgment. ECF 44-1.

But Judge Jones disagreed with 18F, finding that the amended complaint would *not* be futile because it alleged specific post-Release, post-2014 Litigation conduct, and thus "cure[d] that fatal pleading flaw" suffered by the original complaint. ECF 58. Specifically, Judge Jones found that the amended complaint's allegations about 18F's use of Edible's marks in keyword searches associated with Shari's Berries

---

[5] Meanwhile, Judge Jones *denied* 18F's motion to dismiss Edible's breach of contract claim, finding that Edible had complied with the Settlement Agreement's notice provision.

could not be barred by *res judicata* or the Release:

> Because 18F did not own Shari's Berries until 3 years after the 2016 Agreement, keyword searches using EDIBLE Marks associated with Shari's Berries could not have been actionable in 2016 and are not a part of the same operative nucleus of facts as the 2014 suit or the 2016 Agreement.

*Id.* at 8–9. Moreover, Judge Jones found that "fundamental change[s] in the market conditions" constituted a "change in the operative nucleus of fact and claims." *Id.* Thus, Judge Jones granted Edible leave to file the proposed amended complaint.[6]

**Edible's motion for summary judgment.** 18F answered the amended complaint and the case proceeded to discovery. At the end of almost two years of voluminous discovery—with the parties collectively issuing 224 requests for production, 36 interrogatories, approximately 22 third-party subpoenas, taking approximately 40 depositions, and producing over tens of thousands of documents—18F filed its motion for summary judgment, seeking summary judgment on "certain claims brought, and forms of damages" sought by Edible. ECF 279 at 1.

Relevant to this appeal, 18F argued that Edible's "Keyword Claims in Counts I, II, III, IV, V, VI, VIII, and IX … namely, the claims

---

[6] Edible later filed a Second Amended Complaint, with 18F's consent and the Court's leave, that contained (among other things) additional specific allegations about the confusion 18F's conduct caused among customers. ECF 94-1. The Second Amended Complaint is the operative complaint in this case.

that bidding on [Edible's] trademarks to trigger search engine ads constitutes trademark infringement, unfair competition, and dilution," were barred by the Release, claim preclusion, and the doctrine of unclean hands. *Id.* 18F did *not* move for summary judgment on Edible's breach of contract claim contained in Count VII. Nor did 18F move for summary judgment on the merits of the majority of Edible's keyword-bidding claims.

**The district court's order.** On March 19, 2024, Judge Victoria M. Calvert—to whom the case had been reassigned during the discovery period—granted summary judgment in 18F's favor, but *only* on 18F's Release and claim-preclusion arguments. ECF 374. In a departure from Judge Jones's earlier ruling, Judge Calvert found that Edible's claims "concern a continuation of the same conduct at issue in the 2014 Litigation," and that Edible "fail[ed] to identify facts that demonstrate how 18F's post-settlement conduct is materially different from the released conduct." *Id.* at 20. Judge Calvert also found that the inclusion of the keyword-bidding paragraph in the Settlement Agreement "reflect[ed] the Parties' intent to release all claims related to 18F's bidding on [Edible's] trademarks." *Id.* at 23. Thus, Judge Calvert found that Edible's keyword-bidding claims involved the same "cause of action" as that asserted in the 2014 Litigation and released in the Settlement Agreement and were therefore barred by the Release and by claim-preclusion. *Id.* at 23–26.

Judge Calvert's order did not address 18F's other arguments in its motion nor Edible's breach of contract claim in Count VII. Nevertheless, she directed the Clerk to "enter judgment in favor of Defendants and against Plaintiffs and to close the case." *Id.* at 27–28.

Edible now appeals from that order.

## VI. Standard of review.

This is an appeal from the district court's grant of summary judgment, which is reviewed "*de novo*, applying the same legal standards used by the district court." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). Further, the district court's order was grounded in two legal conclusions that are also reviewed *de novo*: Edible's keyword-bidding claims are (1) covered by the language of the Release, and (2) barred by *res judicata*. *See Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352, 1356 (11th Cir. 2008) ("We review a district court's interpretation of a contract provision de novo."); *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1375 (11th Cir. 2011) ("Because res judicata determinations are pure questions of law, we review them de novo.") (quotations omitted).

## SUMMARY OF THE ARGUMENT

The district court granted summary judgment on the entirety of Edible's claims in this case on the grounds that its trademark infringement claims relating to 18F's keyword-bidding practices were barred by the Release contained in the parties' Settlement Agreement

related to the 2014 Litigation and by the doctrine of claim preclusion (*res judicata*). This was error in two ways.

*First*, Edible's keyword-bidding claims are neither barred by the Release nor by claim preclusion because they do not involve the same "cause of action" as—and could not have been brought in—the 2014 Litigation. Both the Release and claim preclusion only bar those "claims" or "causes of action" which were or could have been brought in earlier litigation. Edible's keyword-bidding claims in this case are predicated entirely on 18F's *post*-settlement conduct and infringements of Edible's Marks. Because the Lanham Act proscribes individual *acts* of infringement—not simply schemes, conspiracies, or "courses of conduct"—Edible's post-settlement claims could not have been brought in the 2014 Litigation and do not constitute the same "cause of action."

*Second*, the district court erred because it granted summary judgment in 18F's favor on Edible's claim for breach of the Settlement Agreement (Count VII) but failed to articulate why it did so or notice to Edible that it was considering doing so. If the district court relied on the same reasoning it used for Edible's keyword-bidding claims, then the district court erred because the Release and claim preclusion are plainly inapplicable to a claim for a breach of the Settlement Agreement itself. And if it granted judgment for some unknown reason, then it violated Fed. R. Civ. P. 56. Moreover, 18F did not move for summary judgment on Count VII, and the district court did not give notice to Edible before

– 16 –

granting summary judgment *sua sponte* on that claim.

For these reasons, the district court's order must be reversed and the case remanded for further proceedings.

## ARGUMENT

### I. Neither claim preclusion nor the Settlement Agreement bar Edible's claims based on 18F's post-settlement conduct.

The district court granted 18F's motion for summary judgment on Edible's keyword-bidding claims for one essential reason: Edible's claims against 18F in this case are predicated on a similar *type* of conduct to that which was litigated in the 2014 Litigation and are thus barred by claim preclusion and the Release. ECF 374 at 13–27. The district court, however, erred by confusing *causes of action* (which are covered by the Release and claim preclusion) with *courses of conduct* (which are not) and by ignoring the Settlement Agreement's plain language. It must be reversed.

### A. Claim preclusion and the Release bar only "causes of action" which "were or could have been brought" during prior litigation.

**Claim preclusion.** Claim preclusion (a category of *res judicata*) bars a party from raising "issues that could have been raised and decided in a prior action" if the "[s]uits involve the same claim (or 'cause of action')." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020). In order for the doctrine to apply, the "same *cause of action* [must be] involved in both cases." *Maldonado*, 664 F.3d

at 1375 (emphasis added). "If the second lawsuit involves a new claim or cause of action, the parties may raise assertions or defenses that were omitted from the first lawsuit even though they were equally relevant to the first cause of action." *Lucky Brand Dungarees*, 590 U.S. at 412 (quotations omitted).

Notably, claim preclusion is retrospective—it generally "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees*, 590 at 414 (quoting *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2305 (2016)). "This is for good reason: Events that occur after the plaintiff files suit often give rise to new material operative facts that in themselves, or taken in conjunction with the antecedent facts, create a new claim to relief." *Lucky Brand Dungarees*, 590 U.S. at 415. Thus, for claim preclusion to apply, the claim at issue must have existed and been actionable at the time of the prior litigation.

**The Release.** Likewise, the Release only released "[1] claims, liabilities, causes of action, and suits … [2] arising out of any facts and matters occurring *prior to* the Execution of [the Settlement] Agreement [3] *that were asserted or could have been asserted* in the [2014 Litigation]." ECF 17-2 § 14 (emphasis added). In other words, the Release's plain language demonstrates that the Release was purely retrospective—it only released claims or "causes of action" that existed and could have been asserted prior to the execution of the 2016

– 18 –

Settlement Agreement.

The fact that the Settlement Agreement contemplated a possible, future agreement between the parties governing 18F's use of Edible's Marks in its keyword advertising does not change this conclusion. The district court found that because the Settlement Agreement contemplated a possible future agreement between the parties regarding 18F's future use of Edible's Marks—an agreement which never came to pass because the FTC refused to give its approval to the idea—the Settlement Agreement therefore "anticipated and permitted" 18F's continued use of Edible's Marks and "reflects the Parties' intent to release all claims related to 18F's bidding on [Edible's] trademarks." ECF 374 at 23. This was error in multiple ways.

*First*, the district court's reasoning completely ignores the controlling evidence of the parties' intent: the plain language of the Release itself. *See, e.g.*, *Carey v. Houston Oral Surgeons, LLC*, 265 Ga. App. 812, 816 (2004) ("where the terms of a written release are clear and unambiguous, the court will look to the release alone to find the intention of the parties."). The Release does not contemplate the release of future claims. Indeed, the Release expressly releases only those claims which "[1] aris[e] out of any facts and matters occurring *prior to* the Execution of [the Settlement] Agreement [2] *that were asserted or could have been asserted* in the [2014 Litigation]." ECF 17-2 § 14 (emphasis added). Whatever the rest of the Settlement Agreement does

– 19 –

or does not contemplate, the Release itself only releases those claims based on pre-settlement facts that could have been raised in the 2014 Litigation.

*Second*, the Settlement Agreement did not "permit" 18F's continued misappropriation of Edible's Marks. Far from it. The Settlement Agreement merely contemplated a potential, future, separate agreement that would bar 18F's use of Edible's Marks moving forward. But any obligations 18F had to enter into such an agreement—again, one that was *separate* from the Settlement Agreement—was predicated on FTC approval. Without that approval, those provisions of the Settlement Agreement imposing any such obligation became "null and void and shall have no force or effect." In short, the FTC's rejection of the concept left nothing in the Settlement Agreement governing 18F's use of Edible's Marks one way or the other. 18F was free to make its own choices at its own risk.[7]

Thus, the only question presented by the Release is—like claim preclusion—whether Edible's claims based on 18F's post-settlement keyword-bidding practices constitute the same "cause of action" as those raised in the 2014 Litigation. The answer is clearly, "No."

---

[7] Indeed, the district court's reasoning would turn the Settlement Agreement into a *de facto* perpetual license for 18F to use Edible's Marks. That cannot square with the Settlement Agreement's plain, unambiguous text.

### B. 18F's post-settlement keyword bidding gives rise to independent causes of action that did not exist as of the 2014 Litigation.

A "cause of action" is a specific set of operative facts that give rise to and provide the foundation for a legal claim. *See Lucky Brand Dungarees*, 590 U.S. at 412 ("Suits involve the same claim (or 'cause of action') when they arise from the same transaction or involve a common nucleus of operative facts"); *In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1288 (11th Cir. 2006) ("the test is whether they arise out of the same nucleus of operative fact or are based upon the same factual predicate"). In other words, a "cause of action" can be thought of as the facts or events upon which a legal claim depends. Therefore, in order to determine whether two actions involve the same cause of action, it is necessary to look not only at the facts at issue in both actions, but also the elements that make up the claims at issue in the two cases. *Id.* If the claims in the latter case do not depend on—or could be asserted wholly independent of—the facts raised in the first case, then the two proceedings do not involve the same "cause of action."

Here, Edible's keyword-bidding claims involve an entirely new cause of action because they are predicated solely on 18F's post-judgment, post-settlement infringements of Edible's marks through keyword bidding. The Lanham Act, which provides the basis for Edible's keyword-bidding claims in this case, seeks to remedy individual *acts* of wrongful conduct. A defendant violates and is liable under the Lanham

Act anytime he:

> [1] use[s] in commerce any reproduction, counter-
> feit, copy, or colorable imitation of a registered
> mark [2] in connection with the sale, offering for
> sale, distribution, or advertising of any goods or
> services [3] on or in connection with which such
> use is likely to cause confusion, or to cause mis-
> take, or to deceive[.]

15 U.S.C. § 1114. Each act of infringement gives rise to its own independent claim that is not dependent on the occurrence of any other infringing act. As a result, a new and separate cause of action for trademark infringement arises with each infringing act, even if part of a larger course, pattern, or scheme of infringement. *E.g.*, *Marcel Fashions Grp. Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015) ("a suit claiming damages for prior [trademark] infringements does not bar a subsequent suit for damages for subsequent infringements."); *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1165 (S.D. Tex. 2016) ("each subsequent [trademark] violation is a separate event, separately actionable") (cleaned up). Thus, every time 18F uses Edible's mark to place its advertisements gives rise to a new cause of action which did not exist, and could not have been asserted, before the Settlement Agreement.

The district court recognized this at the motion to dismiss stage. ECF 58 at 8–9. Nevertheless, the district court changed course at summary judgment, holding that Edible's claims were barred because

they were based on the same *type* or "course" of infringing behavior as that which was litigated in the 2014 Litigation. Because Edible "fail[ed] to identify facts that demonstrate how 18F's post-settlement *conduct* is materially different from the released *conduct*," the district court held that 18F's post-settlement actions were "a continuation of the same *conduct*" that was the subject of the 2014 Litigation.

But the mere fact that 18F's post-settlement conduct is similar (or even identical) to its pre-settlement conduct is not relevant, let alone dispositive, of Edible's claims in this case. Decades of binding precedent establish that the mere fact "[t]hat both suits involved 'essentially the same course of conduct' is not decisive" to the question of whether the same *cause of action* has been raised because a "course of conduct … may frequently give rise to more than a single cause of action." *Lawlor*, 349 U.S. at 327–28 (emphasis added).

In *Lawlor*, for example, an advertisement-leasing company brought an antitrust claim against the exclusive distributor and manufacturer of motion-picture advertising materials. *Id.* at 323–24. The plaintiff first asserted antitrust claims against the defendant in 1942, alleging that the defendant had attempted to establish a monopoly through exclusive licenses with film producers. *Id.* at 324. The parties settled that case before trial and the district court dismissed the case "with prejudice." *Id.*

Seven years later, however, the plaintiff sued the defendant again,

claiming that the defendant continued its anticompetitive conduct after the settlement. *Id.* at 325. Like Edible here, the plaintiffs only sought damages resulting from injuries suffered *after* the settlement and dismissal of the earlier case. *Id.* The Third Circuit affirmed the district court's dismissal, holding that the claims were precluded because "in substance the complaint [was] the same" and was based on the "same course of wrongful conduct" alleged in the earlier litigation. *Lawlor v. Nat'l Screen Serv. Corp.*, 211 F.2d 934, 937 (3d Cir. 1954), *rev'd*, 349 U.S. at 322.

The Supreme Court reversed. As mentioned above, the mere fact that the claims were based on the same *type* or "course" of conduct was immaterial. The conduct at issue in the new case "was all subsequent to" the prior judgment. *Lawlor*, 349 U.S. at 328. There were "new antitrust violations alleged here" that were "not present in the prior action." *Id.* While the earlier judgment "preclude[d] recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* As determined by the Supreme Court, the preclusive effect of a prior action is not determined by whether the new suit alleges the same *type* of conduct, but whether the new suit alleges the same *cause of action*.

The Supreme Court recently reemphasized this distinction in the context of trademark-infringement claims. In *Lucky Brand Dungarees*—

a case involving decades of litigation between the two parties over Lucky Brands' alleged infringement of Marcel's "Get Lucky" mark on jeans—the Supreme Court held that "[c]laim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." 590 U.S.at 414 (citing *Lawlor*, 349 U.S. at 327–28). "This principle takes on particular force in the trademark context, where the enforceability of a mark and likelihood of confusion often turns on extrinsic facts that change over time." *Id.* at 415.

Numerous other courts have also pointed out these distinctions in holding that post-settlement or post-judgment claims are not precluded where they are based on post-settlement or post-judgment conduct. *See, e.g.*, *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 899 (5th Cir. 2016) (false-advertising claims not precluded because advertisements "were made after the 2004 settlement of the first lawsuit"); *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015) ("Winning a judgment based on the defendant's violation of the plaintiff's rights does not deprive the plaintiff of the right to sue the same defendant again for the defendant's further subsequent similar violations."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 500 (2d Cir. 2014) ("when post-judgment conduct is sufficient to state a cause of action on its own … the later course of conduct underlying the second suit gives rise to a new cause of action that is not barred by *res judicata*."); *Factory Direct Wholesale, LLC v.*

– 25 –

*iTouchless Housewares & Prod., Inc.*, 411 F. Supp. 3d 905, 916 (N.D. Cal. 2019) (Lanham Act claims not precluded because defendant "renewed its conduct" which gave rise to new causes of action); *see also* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4409 (3d ed. 2008) ("A substantially single course of activity may continue through the life of a first suit and beyond. The basic claim-preclusion result is clear: a new claim or cause of action is created as the conduct continues.").

Indeed, even the treatise cited by 18F in its summary judgment brief recognizes this same principle:

> Claims arising from acts of infringement occurring after those involved in the prior lawsuit could not have been asserted in that prior lawsuit and are not barred by claim preclusion. The later occurring facts give rise to a new 'claim' **even if they are a continuation of the same course of conduct**.

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:81 (5th ed. 2024) (emphasis added).

This Court's decision in *In re Managed Care*—which the district court relied upon heavily in its summary-judgment order—does not suggest otherwise.[8] 756 F.3d 1222 (11th Cir. 2014). If anything, the

---

[8] At a minimum, *In re Managed Care* must be squared with the Supreme Court's decision in *Lawlor* and *Lucky Brand Dungarees*.

distinction the Court drew between the claims in that case highlights the district court's error here.

The plaintiffs in *In re Managed Care* asserted three types of claims: RICO, antitrust, and ERISA claims. This Court held that the RICO and antitrust claims were barred by a prior release because they sought to remedy a *conspiracy*—which, in that case, existed before the settlement. The wrongful conduct at issue in those causes of action was the conspiracy itself, and the post-settlement acts were merely "new, overt acts within an ongoing conspiracy, rather than new claims in and of themselves." *Id.* at 1236. Thus, "all facts necessary to state a [RICO or antitrust] cause of action had occurred long before the Settlement Agreement took effect," precluding those claims. *Id.*

By contrast, the Court held that the ERISA claims were not precluded because the ERISA claims seek to remedy individual *acts*—acts which, in that case, had *not* occurred by the time the settlement occurred. *Id.* at 1238 (ERISA claims require the denial of a claim, which had not occurred at the time of settlement). Thus, the ERISA claims could not have been asserted at the time—even if the *type* of conduct was similar. *Id.* Edible's trademark-infringement claims here are far more similar to the ERISA claims at issue in *In re Managed Care* because, as discussed above, trademark infringement arises from individual acts, not schemes or conspiracies.

Because Edible's keyword-bidding claims are based on 18F's post-

settlement conduct, they constitute new, independent causes of action based on new conduct, even if that conduct is similar (or even identical) to 18F's previous conduct at issue in the 2014 Litigation. They could not have been raised in the 2014 Litigation and, thus, are not barred by either the Release or the doctrine of claim preclusion. The district court therefore erred and must be reversed, with the case remanded for further proceedings.

## II.  The district court erred by granting summary judgment without addressing Edible's breach of contract claim.

In addition to the error in its reasoning regarding claim preclusion and the scope of the Release, the district court also erred by granting summary judgment on Edible's breach of contract claim in Count VII. As noted above, 18F did not move for summary judgment on this claim. Nor did the district court address it in its order.[9] Thus, it is unclear whether the Court granted summary judgment on that claim for the same reasons as the other claims, or whether it granted summary

---

[9] The Court previously issued a jurisdictional question to the parties asking for the parties' position on whether the district court's failure to address the breach of contract claim in its summary-judgment order meant that the order was not a "final judgment" subject to appeal. Dkt. 3. Both parties agreed that the order *is* a final judgment, and the Court found "probable jurisdiction" based on the arguments in the parties' responses. Dkt. 16, 18, 23. For the sake of efficiency, Edible proceeds in this brief under the assumption that the order *is* a final judgment and otherwise incorporates its arguments in its response to the Court's jurisdictional question.

judgment for some other, unarticulated reason. Either way, the trial court erred.

On the one hand, neither the Release nor claim preclusion could possibly bar Edible's claims for breach of the Settlement Agreement itself because that Edible obviously could not have brought such a claim before the Settlement Agreement was actually executed.

On the other hand, if the trial court granted summary judgment on Edible's contract claim for reasons it failed to articulate in its order, then it violated Rule 56. *See* Fed. R. Civ. P. 56(a) ("The court should state on the record the reasons for granting or denying the motion."); *see also, e.g.*, *Sanders v. Rose,* 808 F. App'x 102, 108 (3d Cir. 2020) (vacating and remanding for failure to articulate the reasons for grant of summary judgment); *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, 803 F. App'x 540, 541 (2d Cir. 2020) (same); *Baker v. TDCJ-CID*, 774 F. App'x 198, 199 (5th Cir. 2019) (same).

Moreover, the district court did not give Edible sufficient notice that it was considering granting judgment on its breach of contract claim. 18F did not move for summary judgment on that claim, and the district court never issued any notice that it was considering it *sua sponte*.

For these independent reasons, the trial court's order must be vacated and remanded.

## CONCLUSION

For the reasons articulated above, Edible respectfully requests that the Court reverse the district court's March 19, 2024 summary judgment order as to the application of claim preclusion and the Release to its keyword bidding claims, vacate the district court's grant of summary judgment as to Edible's breach of contract claim, and remand the case for further proceedings.

Respectfully submitted this 9th day of September, 2024,

/s/ Jason S. Alloy
Jason S. Alloy
Jeremy U. Littlefield
Edward A. Bedard
ROBBINS ALLOY BELINFANTE
    LITTLEFIELD, LLC
500 14th St. NW
Atlanta, GA 30318
T:(678) 701-9381

*Counsel for Appellants*
*Edible IP, LLC and*
*Edible Arrangements, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. Rule 32(a)(7)(B) and 11th Cir. R. 32-3 because it contains 6,740 words as counted by the word-processing system used to prepare the document.

This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because the document was prepared in Microsoft Word using the proportionally-spaced Century Schoolbook typeface in a 14-point font.

*/s/ Jason S. Alloy*
Jason S. Alloy