# 24-11347

# United States Court of Appeals
### *for the*
# Eleventh Circuit

EDIBLE IP, LLC, EDIBLE ARRANGMENTS LLC,

*Plaintiffs - Counter Defendants - Appellants,*

– v. –

1-800-FLOWERS.COM, INC., 800-FLOWERS, INC.,

*Defendants - Counter Claimants - Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 1:20-cv-02405-VMC (Hon. Victoria M. Calvert)

# REDCATED BRIEF OF APPELLEES

Charles H. Hooker III
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

*Counsel for Appellees*

Adam H. Charnes
KILPATRICK TOWNSEND
& STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
(214) 922-7100

*Counsel for Appellees*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 811234)

*Edible IP, LLC, et al v. 1-800-Flowers.com, Inc., et al,*
Record No. 24-11347

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-2, Appellees 1-800-Flowers.com, Inc. and 800-Flowers, Inc. ("18F") identify the following persons and entities who may have an interest in the outcome of this case:

1. 1-800-Flowers.com, Inc., Appellee (NASDAQ: FLWS);

2. 1-800-Flowers Retail Inc., subsidiary of 1-800-Flowers.com, Inc.;

3. 800-Flowers, Inc., Appellee;

4. Alloy, Jason, counsel for Appellants;

5. Altman, Solesse Lane, former counsel for Appellants;

6. Ballard Spahr, LLP, counsel for Appellants;

7. Beeney, Eliza, former counsel for Appellants;

8. Bedard, Edward A., counsel for Appellants;

9. Bondurant Mixson & Elmore, LLP, former counsel for Appellants;

10. Brewster, William H., counsel for Appellees;

*Edible IP, LLC, et al v. 1-800-Flowers.com, Inc., et al,*
Record No. 24-11347

11. Calvert, Victoria M., United States District Judge, Northern District of Georgia, from whom issued the Order and Judgment on appeal in this instance;

12. Carter, Jason James, former counsel for Appellants;

13. Chanin, Erica C., counsel for Appellees;

14. Charnes, Adam H., counsel for Appellees;

15. Cheryl & Co., subsidiary of 1-800-Flowers.com, Inc.;

16. Edible Arrangements, LLC, Appellants;

17. Edible IP, LLC, Appellants;

18. Fehlan, Kirsten, counsel for Appellants;

19. Gubernick, Carly, counsel for Appellants;

20. Harry and David, LLC, subsidiary of 1-800-Flowers.com, Inc.;

21. Hooker III, Charles H., counsel for Appellees;

22. Hoffner, Kaylee Elizabeth, former counsel for Appellants;

23. Johnson, Grant L., former counsel for Appellants;

24. Kilpatrick Townsend & Stockton LLP, counsel for Appellees;

25. Littlefield, Jeremy U., counsel for Appellants;

26. Matich IV, Nicholas T., former counsel for Appellants;

*Edible IP, LLC, et al v. 1-800-Flowers.com, Inc., et al,*
Record No. 24-11347

27.    McKool Smith, former counsel for Appellants;

28.    Miller, Richard William, counsel for Appellants;

29.    PersonalizationMall.com, LLC, subsidiary of 1-800-Flowers.com, Inc.;

30.    The Popcorn Factory, Inc., subsidiary of 1-800-Flowers.com, Inc.;

31.    Powell, Judith A., former counsel for Appellees;

32.    Robbins Alloy Belinfante Littlefield LLC, counsel for Appellants;

33.    Rzonca, Lynn E., counsel for Appellants;

34.    Sears, Bradford K., counsel for Appellees;

35.    Simler, Benjamin Nichols, counsel for Appellants;

36.    Shari's Berries.com, LLC, subsidiary of 1-800-Flowers.com, Inc.;

37.    Sivakumar, Madhundra, counsel for Appellants;

38.    Stancil, Andrew Dorsey, counsel for Appellants;

39.    Tate, Emily B., former counsel for Appellants;

40.    Wright, Briggs M., counsel for Appellees.

*Edible IP, LLC, et al v. 1-800-Flowers.com, Inc., et al,*
Record No. 24-11347

Dated:  October 25, 2024

Respectfully submitted,

/s/ Charles H. Hooker III
Charles H. Hooker III
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, Georgia 30309
(404) 815-6376
chooker@ktslaw.com

## STATEMENT REGARDING ORAL ARGUMENT

The District Court provided multiple independent and sufficient bases in support of granting summary judgment and entering final judgment in favor of Appellees 1-800-Flowers.com, Inc. and 800-Flowers, Inc. (collectively, "18F" or "Appellees") against all of the claims asserted by Appellants Edible IP, LLC and Edible Arrangements, LLC (collectively, "EA" or "Appellants"). Appellees respectfully submit that this Court should affirm the District Court's judgment without oral argument. If the Court, however, determines that oral argument would be helpful or is necessary, 18F will welcome the opportunity to present its case and to answer any questions the Court may have.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT .............................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF AUTHORITIES ................................................................ iv

PRELIMINARY STATEMENT ............................................................. 1

JURISDICTIONAL STATEMENT .......................................................... 6

ISSUES PRESENTED ........................................................................ 7

STATEMENT OF THE CASE ................................................................ 7

    I.    The Parties Compete In The Gifting Marketplace ................. 7

        A.    Purchasing Competitors' Trademarks As
Keywords Is A Common And Fair Practice .................. 8

        B.    Keyword Bidding Does Not Entail Using
Competitor's Marks In Resulting Search-Engine
Ads ............................................................................ 10

        C.    EA Purchases 18F's Marks As Keywords ................... 11

    II.    The 2014 Litigation .............................................................. 12

        A.    The 2016 Agreement .................................................. 12

        B.    EA Knew 18F Would Continue Bidding On
"Edible" Terms Following The 2016 Agreement ......... 13

    III.    Angered By 18F Outbidding EA for Shari's Berries'
Assets, EA Filed This Lawsuit ............................................. 14

    IV.    The District Court Granted Summary Judgment
Against All Of EA's Claims And Entered Final
Judgment .............................................................................. 17

SUMMARY OF THE ARGUMENT ....................................................... 19

STANDARD OF REVIEW ................................................................... 21

ARGUMENT ...................................................... 22

I.    EA Released Its Keyword Claims In The 2016
      Agreement ............................................... 22

      A.    The Release Unambiguously Bars Claims
            "Arising Out Of" Matters Asserted In The 2014
            Litigation ...................................... 24

      B.    Binding Precedent Confirms The Release ................... 26

      C.    Georgia's Rules Of Construction Mandate
            Release .......................................... 35

            1.    The "Whole Contract" Canon Supports
                  Release .................................. 36

            2.    Construing Any Ambiguities Against EA
                  Supports The Release ........................ 40

            3.    A Full Release Was The Intent Of The
                  Parties .................................. 41

      D.    EA Cannot Plead Around A Release That
            Encompasses Its Amended Allegations ..................... 43

II.   The Keyword Claims Are Barred By *Res Judicata* ............. 45

III.  The District Court Properly Granted Summary
      Judgment On EA's Breach-Of-Contract Claim ................... 58

      A.    EA Failed To Create A Triable Issue ...................... 58

      B.    EA's Contract Claim Fails Regardless Of
            Whether The District Court Provided Notice ............. 60

CONCLUSION ................................................... 62

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ............................................................ 2

*Alea London Ltd. v. Am. Home Servs., Inc.*,
  638 F.3d 768 (11th Cir. 2011) ............................................................ 44

*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ............................................................ 22

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
  194 F.3d 1367 (Fed. Cir. 1999) .................................................. 38, 40, 45

*Bates v. JPMorgan Chase Bank, NA*,
  768 F.3d 1126 (11th Cir. 2014) ............................................................ 59

*Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v.*
  *Int'l Bus. Machs. Corp.*,
  110 F.4th 106 (2d Cir. 2024) ............................................................ 52

*Case v. Eslinger*,
  555 F.3d 1317 (11th Cir. 2009) ............................................................ 58

*Dennis v. City of Atlanta*,
  751 S.E.2d 469, 324 Ga. App. 659 (2013) ............................................ 34

*Denver Homeless Out Loud v. Denver, Co.*,
  32 F.4th 1259 (10th Cir. 2022) ............................................................ 53

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ............................................................ 51

*Edible Int'l, LLC v. Google, LLC*,
  No. 3:18-cv-0216 (D. Conn. 2019) ............................................................ 3

*Edible IP, LLC v. Google, LLC*,
  313 Ga. 305 (2022) ............................................................ 3

*Edible IP, LLC v. MC Brands, LLC*,
  No. 1:20-cv-5840 (N.D. Ill., Mar. 10, 2023) ............................................ 3

iv

*Erie Telecomms., Inc. v. City of Erie*,
    853 F.2d 1084 (3d Cir. 1988) ............................................................ 28

*Escamilla v. M2 Tech., Inc.*,
    657 Fed. Appx. 318 (5th Cir. 2016) ................................................. 53

*Factory Direct Wholesale, LLC v.*
    *iTouchless Housewares & Prods., Inc.*,
    411 F. Supp. 3d 905 (N.D. Cal. 2019) ............................................. 56

*Ga. R.R. Bank & Tr. Co. v. Fed. Deposit Ins. Corp.*,
    758 F.2d 1548 (11th Cir. 1985) ........................................................ 35

*Glazer v. Crescent Wallcoverings, Inc.*,
    451 S.E.2d 509 (Ga. Ct. App. 1994) ................................................ 42

*Grange Mut. Cas. Co. v. Woodard*,
    861 F.3d 1224 (11th Cir. 2017) ................................................. 24, 25

*Hatco Corp. v. W.R. Grace & Co Conn.*,
    59 F.3d 400 (3d Cir. 1995) ............................................................... 40

*Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*,
    971 F.3d 1321 (11th Cir. 2020) ........................................................ 61

*In re Fisher Island Inv., Inc.*,
    778 F.3d 1172 (11th Cir. 2015) ................................................. 22, 62

*In re Managed Care*,
    756 F.3d 1222 (11th Cir. 2014) ............................. 29, 30, 32, 33, 34, 56

*In re Narcisi*,
    691 Fed. Appx. 606 (11th Cir. 2017) ............................................... 22

*Info Sys. & Networks Corp. v. City of Atlanta*,
    281 F.3d 1220 (11th Cir. 2002) ................................................. 36, 41

*Johnson, Drake & Piper, Inc. v. United States*,
    531 F.2d 1037 (U.S. Ct. Cl. 1976) ............................................... 40-41

*Kobatake v. E.I. DuPont De Nemours & Co.*,
    162 F.3d 619 (11th Cir 1998) ................................................. 26, 27, 28

*Lawlor v. Nat'l Screen Serv. Corp.*,
    349 U.S. 322 (1955) .......................................................................... 54

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  590 U.S. 405 (2020) .................................................................54-55, 57

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  779 F.3d 107 ......................................................................................55

*Maldonado v. U.S. Attorney General*,
  664 F.3d 1369 (11th Cir. 2011) ........................................................55

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...........................................................................59

*Municipal Elec. Auth. v. Gold-Arrow Farms, Inc.*,
  276 Ga. App. 862, 625 S.E.2d 57 (Ga. Ct. App. 2005) ........................36

*Oreck Direct, LLC v. Dyson, Inc.*,
  560 F.3d 398 (5th Cir. 2009) .............................................................52

*Ramirez v. Sec'y, U.S. Dep't of Transp.*,
  686 F.3d 1239 (11th Cir. 2012) .........................................................51

*Restigouche, Inc. v. Town of Jupiter*,
  59 F.3d 1208 (11th Cir. 1995) ...........................................................61

*Retractable Technologies, Inc. v. Becton Dickinson & Co.*,
  842 F.3d 883 (5th Cir. 2016) .............................................................55

*Rodemaker v. City of Valdosta Bd. of Educ.*,
  110 F.4th 1318 (11th Cir. 2024).........................................21, 46, 50, 52

*Ryan v. State Farm Mut. Auto. Ins. Co.*,
  261 Ga. 869, 413 S.E.2d 705 (1992) ...................................................35

*Sanchez v. Guzman*,
  105 F.4th 1285 (10th Cir. 2024)....................................................50-51

*Schafer v. Time, Inc.*,
  142 F.3d 1361 (11th Cir. 1998) .........................................................37

*Senju Pharm. Co., Ltd. v. Apotex Inc.*,
  746 F.3d 1344 (Fed. Cir. 2014).........................................................53

*Shaw v. Donahoe*,
  605 Fed. Appx. 494 (6th Cir. 2015) ...................................................22

*Sheridan v. Crown Cap. Corp.*,
251 Ga. App. 314, 554 S.E.2d 296 (2001)............................................36

*Silberstein v. Fox Ent. Grp., Inc.*,
732 Fed. Appx. 517 (9th Cir. 2018) ......................................................53

*Southland Distribs. Mktg. Co. v. S&P Co.*,
296 F.3d 1050 (11th Cir. 2002) ............................................................21

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)..........................................................56, 57

*Thomas v. Blue Cross and Blue Shield Ass'n*,
594 F.3d 814 (11th Cir. 2010) .......................................................28, 29

*Three Rivers Motors v. Ford Motor Co.*,
522 F.2d 885 (3d Cir. 1975)..................................................................41

*Trustmark Ins. Co. v. ESLU, Inc.*,
299 F.3d 1265 (11th Cir. 2002) ............................................................46

*TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*,
959 F.3d 13185 (11th Cir. 2020) ..........................................................46

*Unified Gov't of Athens-Clarke County. v. McCrary*,
280 Ga. 901, 635 S.E.2d 150 (2006) ....................................................25

*United States v. Aetna Cas. Ins. Co.*,
921 F.2d 741 (8th Cir. 1990) ................................................................28

*Williamson v. Ala. Dep't of Mental Health & Mental Retardation*,
No. 21-13274, 2023 WL 5287873 ...........................................58, 59, 61

*Woody's Steaks, LLC v. Pastoria*,
584 S.E.2d 41 (Ga. Ct. App. 2003) ......................................................35

**Statutes & Other Authorities:**

15 U.S.C. § 1121 ....................................................................................6

28 U.S.C. § 1291 ....................................................................................6

28 U.S.C. § 1331 ....................................................................................6

28 U.S.C. § 1338 ....................................................................................6

28 U.S.C. § 1367 ....................................................................................6

Black's Law Dictionary (12th ed. 2024) ...............................................25

J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition* § 25A:7 (5th ed.) ..............................................................2

J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 32:81 (5th ed.) ............................................................57

O.C.G.A. § 13-2-2 ...............................................................................35

O.C.G.A. § 13-2-2(4) ...........................................................................35

O.C.G.A. § 13-2-2(5) ......................................................................36, 40

## PRELIMINARY STATEMENT

The central premise of EA's case is: 18F's bidding on EA's trademarks to trigger search-engine advertisements constitutes trademark infringement, unfair competition, and dilution—*even though EA's trademarks do not appear anywhere in the advertisements* (the "Keyword Claims").[1]

EA's online advertising agency, however, admits this is a "*common*"[2] practice the agency recommends, and EA's keyword advertising expert concedes it is "*common*" and "*accepted*,"[3] not only in the parties' gifting market but across online advertising in virtually every industry. EA further admits ███████████████████████████████ ██████████████████████████████████████.[4]

Bidding on competitors' branded terms is ubiquitous, in part, because courts routinely have rejected keyword claims like EA's, such

---

[1] EA also claims 18F infringed and diluted EA's marks, competed unfairly, and breached the parties' settlement agreement by displaying "edible"-formative terms in 18F's ad copy. *See* Dkt. 94-1 ¶¶ 65, 67. But after 18F moved for summary judgment against such ad copy claims, EA did not identify any evidence supporting them in its response.

[2] Dkt. 282-8 at 98:3–12. "Dkt." citations in this Brief refer to the District Court docket.

[3] Dkt. 281-22 at 105:1–10.

[4] Dkt. 282-6 at 425:4-435:6; 438:7-440:14.

that a body of law exists holding that the act of bidding alone does not give rise to trademark infringement or unfair competition.[5] During this appeal, in fact, the Second Circuit "join[ed] *the consensus view* and decide[d] that *the mere act of purchasing a competitor's trademarks in the context of keyword search advertising does not constitute trademark infringement.*" *1-800 Contacts, Inc. v. JAND, Inc.*, No. 22-1634, Dkt. 73-1 at 3 (2d Cir. Oct. 8, 2024) (emphasis added). Even more recently, the Ninth Circuit agreed. *Lerner & Rowe PC v. Brown Engstrand & Shelley LLC*, No. 23-16060, Dkt. 34 at 21 (9th Cir. Oct. 22, 2024) ("[R]easonably prudent consumers shopping on Google would be accustomed to scrolling past advertisements at the top of a list of search results to find the organic result relevant to their query.").

Twice, EA unsuccessfully attempted to stop keyword bidding at its source. *Edible IP, LLC v. Google, LLC*, 313 Ga. 305, 312 (2022) ("[W]e see

---

[5] *See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1243 (10th Cir. 2013) (affirming summary judgment holding that "it would be anomalous to hold a competitor liable simply because it purchased a trademarked keyword…."); J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair Competition* § 25A:7 (5th ed.) (Courts "almost always find no likelihood of confusion if all that a defendant has done is use another's mark as a keyword to trigger an ad for defendant in which the other's trademark does not appear"; collecting cases).

no basis in Georgia statutory law for Edible IP's claim that Google has appropriated the 'Edible Arrangements' trade name simply by using it in Google's algorithms and keyword advertising programs."); *Edible Int'l, LLC v. Google, LLC*, No. 3:18-cv-0216 (D. Conn. 2019), Dkt. 37.[6]

This case marks the second time EA has sued 18F for the same conduct: bidding on search-engine keyword terms that include the word "edible" to trigger online ads in search results. In 2014, EA sued 18F in the U.S. District Court for the District of Connecticut for trademark infringement, dilution, and unfair competition for bidding on EA's marks as search-engine keywords—in addition to a number of other claims unrelated to keyword bidding. Dkt. 281-10 ¶¶ 5, 126, 128. In the parties' 2016 Settlement Agreement (the "2016 Agreement"), ███████████████ ██████████████████████████████████████ ██ █ █████. Dkt. 17-2.[7]

---

[6] *See also* Dkt. 357-18 at 362:18-363:18; Dkt. 357-3 at 40:6-16; 125:15-127:14. EA's zeal for litigation even led it to sue a cannabis retailer for generically using "edible" in connection with cannabis edibles. Dkt. 357-17 at 203:6-207:20; 212:22-216:20. EA dismissed that case. *Edible IP, LLC v. MC Brands, LLC*, No. 1:20-cv-5840 (N.D. Ill., Mar. 10, 2023), ECF Nos. 120–21.

[7] The docket entry for the Agreement is referenced throughout this Brief as the "2016 Agreement."

The District Court in this case properly held that all of EA's claims fail as a matter of law for multiple independent and sufficient reasons. *First*, EA released its Keyword Claims as part of the 2016 Agreement. The Agreement's plain text demonstrates the parties' intent that 18F would continue bidding on EA's marks as keywords. EA knew 18F had bid, would continue bidding, and did continue bidding on EA's marks as keywords after the parties executed the Agreement. Moreover, the ubiquity of competitors bidding on one another's marks as keywords shows the only reasonable expectation the parties could have had in the Agreement is that each would continue bidding on the other's marks as keywords, ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████. Further, the law is clear that when a plaintiff releases a defendant from claims "arising out of," "related to," or "in connection with" matters at issue in a prior litigation, it cannot bring a later action for the same conduct, which is precisely what EA is attempting here—relitigating claims identical to those in the 2014 Litigation.

*Second*, EA's Keyword Claims are barred by *res judicata* because the District of Connecticut dismissed with prejudice EA's identical Keyword Claims in the 2014 Litigation. Contrary to EA's unsubstantiated allegations attempting to plead around *res judicata* in this litigation, "the record is now clear that EA's claims are based on the same conduct adjudicated in the 2014 Litigation"; EA's claims "are substantively identical to the 2014 Litigation and arise out of the same nucleus of operative fact," and "18F is not engaged in new conduct." Dkt. 377 at 26.

*Third*, EA's breach-of-contract claim fails as a matter of law because EA did not respond to 18F's motion against this claim, and no record evidence shows 18F engaged in any conduct constituting a material breach of the Agreement. 18F moved for summary judgment on the basis that EA cannot show "harm or causation concerning damages allegedly stemming from any of its claims," Dkt. 282-2 at 9, expressly stating EA's "contract claim[] require[s] proof of harm, causation, and a calculation of damages," *id.* at 30. EA's opposition failed to counter this argument, and it did not identify any material breach of the 2016 Agreement, any harm, or any causal link between any alleged breach and

5

any supposed damage to EA. *See generally* Dkt. 323-1. The District Court found that "EA fail[ed] to cite any evidence" supporting its assertion that 18F had engaged in different or new conduct, Dkt. 377 at 22 n.3, and thus properly entered judgment against the breach claim, *id.* at 27. As EA elsewhere has conceded, the District Court "granted 18F's motion for summary judgment *in toto* …." USCA11 Dkt. 16 at 6.

For all of these reasons, this Court should affirm the final judgment.

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Federal subject matter jurisdiction exists under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. Supplemental jurisdiction over EA's state law claims is proper under 28 U.S.C. §§ 1338 and 1367.

## ISSUES PRESENTED

I.    Did the District Court err in holding that the Release provision in the parties' 2016 Settlement Agreement bars EA's claims in this case when the Release covers claims "arising out of" any facts and matters at issue in the prior litigation, and when the Agreement, read as a whole contract, demonstrates the parties' intent to release the present claims?

II.   Did the District Court err in holding that *res judicata* bars EA's present claims which are identical to claims EA asserted and then dismissed with prejudice in the prior lawsuit, particularly when the course of conduct at issue—namely, 18F's bidding on keyword terms containing the word "edible" on Google and Bing—continued unchanged throughout the prior lawsuit, through the parties' negotiation of the 2016 Settlement Agreement, and to the present?

III.  Did the District Court err in granting summary judgment against EA's breach-of-contract claim when 18F moved for judgment as a matter of law on *all* of EA's causes of action and EA failed to present evidence of material breach, harm, or causation?

## STATEMENT OF THE CASE

## I.    The Parties Compete In The Gifting Marketplace

18F is well known for selling flowers, cut-fruit arrangements, and various edible gift products, through its family of brands, including 1-800-Flowers, Harry & David, 1-800-Baskets.com, Fruit Bouquets, Shari's Berries, Cheryl's Cookies, and Popcorn Factory. Dkt. 94-1 ¶¶ 12, 39, 41. EA also sells floral and cut-fruit arrangements and related edible gift products. Dkt. 94-1 ¶¶ 12–13. The parties compete with one another and

numerous third parties—including Bouqs, FTD, Sugarwish, Goldbelly, and Spoonful of Comfort—by, among other things, advertising and selling their products online. *See, e.g.*, Dkt. 278-18 at 73:16–77:8.

## A. Purchasing Competitors' Trademarks As Keywords Is A Common And Fair Practice

Like virtually every other industry, purchasing competitors' branded terms as search-engine keywords to trigger online ads is a standard practice in the gifting industry. The parties' keyword advertising experts agreed on this fundamental truth,[8] and EA's "paid search" advertising agency, All Points Digital ("APD"), admitted it. Dkt. 282-8 at 98:3–12.

Specifically, EA's keyword expert, Dr. Bernard Jansen, characterized such bidding as "a common and accepted practice in the keyword advertising domain" that "occurs in many competitive industries." Dkt. 281-22 at 105:1–5; Dkt. 302-21 at 120:22–121:9; 122:11–123:4.[9]

---

[8] Dkt. 282-19 ¶¶ 42-44; Dkt 281-22 at 105:1-10, 114:1-12, 144:9-15; Dkt. 294-7 at 21.

[9] In a rebuttal report in another case, Jansen stated "[a]dvertisers can bid on different search words (known as keywords), *including competitors' brand names*. Competitor bidding is a practice that *occurs in*

Echoing the Second Circuit's recent observation that the "practice of bidding on competitors' trademarks during search advertising auctions is a permissible and standard industry practice,"[10] APD testified that "conquesting" (*i.e.*, the "paid online strategy where you purchase your competitor's company name and show [a keyword] advertisement")[11] "is *common* in digital marketing," including *not only "in the gifting industry but … across all sorts of markets*…." Dkt. 303-6 at 98:3–12 (emphasis added); *see also id.* 99:6–12; 99:13–105:21; Dkt. 302-14–18 (collecting examples across various industries).

The record leaves no doubt that numerous third parties purchase ads triggered by both parties' marks as keywords.[12] Because keyword bidding on competitors' marks is so widespread, APD "recommends the practice" to "its clients." Dkt. 303-6 at 98:20–99:2.

---

*many competitive industries*, and Google does not restrict the use of trademarks as keywords." Dkt. 277-13 ¶ 50 (emphasis added).

[10] *1-800 Contacts*, No. 22-1634, Dkt. 73-1 at 21 (collecting cases).

[11] Dkt. 303-6 at 97:13–17.

[12] *See* ███████████████████████████████████

## B.    Keyword Bidding Does Not Entail Using Competitor's Marks In Resulting Search-Engine Ads

Since 2004, Google expressly has permitted "advertisers to bid on competitors' brands as keywords." Dkt 294-7 ¶ 33. When a user enters a "search term" in Google or Bing, a results page is generated containing both "organic results" (derived solely from the search engine's algorithm) and "paid search results" (derived from the search engine's algorithm plus advertisers' bids on "keyword terms"). Dkt. 282-18 ¶ 23. Keyword terms work *in the background*, *unseen* by consumers, and allow advertisers to specify "ads to be shown when the user types a 'matching' query or search term." Dkt. 282-19 ¶ 39. Not only are keywords unseen, but Google may serve a keyword ad "even though [the user's search term] doesn't include any of the words [in the advertiser's] keyword [term] because [the keyword] *relate[s] to* the [search] query." Dkt. 302-22 at 1 (emphasis added). Put differently, a user's search may trigger an ad— which displays *neither* the search term nor the keyword—merely because the search term "relates to" the keyword according to Google's algorithm, all of which is *unseen* by the user.[13]

---

[13] Google gives this example regarding the keyword term "car window repair." "This keyword can reach searches such as automobile glass

### C.    EA Purchases 18F's Marks As Keywords

Following APD's advice, EA



_____

replacement, even though it doesn't include any of the words as your keyword because they relate to the query." Dkt. 302-22 at 1.

## II.    The 2014 Litigation

Despite the ubiquity of competitor keyword bidding, EA filed the 2014 Litigation alleging 18F infringed EA's rights by purchasing search-engine ads triggered by users searching for "edible" or "edible arrangements," such that "when a consumer inputs [EA's marks] into Google, Yahoo!, or Bing, the search results include … a paid advertisement for 1-800-Flowers.com[]…." Dkt. 281-10 ¶¶ 5, 126, 128.

EA's 2014 Litigation also asserted multiple other claims, including that 18F: infringed EA's rights in a "Six Petal Daisy Design," *id.* ¶¶ 72–83; competed unfairly by using "Edible Arrangements" in 18F's website's metadata, *id.* ¶¶ 132–36; infringed the "Edible Arrangements" mark by describing cut-fruit arrangements generically as "edible fruit arrangements," *id.* ¶¶ 137–40; and induced 18F's distributors and others to infringe EA's purported rights, *id.* ¶¶ 160–74.

### A.    The 2016 Agreement

The parties resolved the 2014 Litigation in the 2016 Agreement. As part of that Agreement, ████████████████ to have released and dismissed with prejudice all of EA's claims in the 2014 Litigation. 2016

Agreement ¶ 10; Dkt. 282-12 at 59:4–11. EA dismissed with prejudice all

claims, Dkt. 281-16; and in the Agreement, EA released 18F from:



2016 Agreement ¶ 14 (emphasis added) (the "Release").

**B.    EA Knew 18F Would Continue Bidding On "Edible" Terms Following The 2016 Agreement**

Other terms in the 2016 Agreement, and the parties' conduct, make

clear EA knew 18F would continue bidding on "edible" terms as

keywords. To start, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶ 3

(emphasis added).

In Paragraph 5, the parties specifically agreed ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ so 18F continued purchasing ads triggered by "edible" terms as keywords without objection from EA.

The undisputed record shows



## III. Angered By 18F Outbidding EA for Shari's Berries' Assets, EA Filed This Lawsuit

Following the 2016 Agreement, 18F and EA bid on one another's marks as keywords without objection, until 18F outbid EA at a bankruptcy auction on July 31, 2019 to acquire the assets of Shari's Berries, another company in the cut-fruit gifting industry. Dkt. 352 at 21 ¶ 12. That same day, EA sent a retributory letter to 18F complaining 18F was infringing EA's rights by bidding on EA's marks as keywords. Dkt. 106-4. 18F promptly responded in an August 10, 2019 letter, pointing out

EA's lack of any evidence for its claims, and asking EA for "substantiation" and "specificity." Dkt. 29-2.

Without further correspondence, EA filed this lawsuit on June 4, 2020. Dkt. 5. EA's original Complaint admitted 18F's conduct had *continued* since the 2014 Litigation: "Defendants have, without Plaintiffs' consent, used and continue to use in commerce the EDIBLE Marks." *Id.* ¶ 65.

When 18F moved to dismiss, Dkt. 16, the District Court granted the motion, holding EA's "keyword search claims are essentially identical to its 2014 keyword search claims and are thus barred by *res judicata*," Dkt. 39 at 14.

Desperate to resuscitate this case, EA pleaded a fiction, asserting 18F engaged in a "new course of conduct that began after the 2016 Agreement." Dkt. 60-1 ¶ 71.[14] After the District Court granted EA leave to amend its complaint, EA subsequently filed a Second Amended

---

[14] Based on that representation, the District Court determined EA's proposed amendment was "not futile." Dkt. 58 at 7-8. The court noted, however, that it was "premature" at the motion-to-dismiss stage to determine whether the amended allegations were "concocted new factual allegations to evade this Court's March 10, 2021 Order [granting 18F's motion to dismiss]." *Id.* at 8 n.4. *The Court later determined in its summary judgment that they, in fact, were unfounded allegations.*

Complaint which maintained the same tall tale that 18F had begun a "new course of conduct." Dkt. 94-1 ¶¶ 82, 89, 96, 105. But the conduct at issue and EA's claims are the same as those in the 2014 Litigation:

| 2014 Litigation Complaint (Dkt. 281-10) | Second Amended Complaint (Dkt. 94-1) |
|---|---|
| ¶ 117: "1-800-Flowers, together with 800-Flowers, has continued and expanded its cut fruit arrangement product line under the "Fruit Bouquets" brand, selling and promoting such products directly on the Infringing Website and through its distribution network of independent florists and franchisees/licensees." | ¶ 42: "The 18F Defendants and their subsidiaries entered into the market for cut fruit arrangements and have continued and expanded their cut fruit arrangement product line, along with other non-fruit gifts, selling and promoting products directly on their websites and through their distribution network of independent florists and franchisees/licensees." |
| ¶ 118: "In doing so, 1-800-Flowers.com, together with 800-Flowers, has embarked on a campaign to intentionally imitate and infringe the EA Marks and confuse consumers into believing that 1-800-Flowers.com and its goods and network of Distributors are somehow associated with or approved by Edible Arrangements, which campaign has escalated and continues to steadily escalate." | ¶ 43: "In doing so, the 18F Defendants embarked on a campaign to intentionally imitate and infringe the EDIBLE Marks and confuse consumers into believing that 1-800-Flowers.com and its goods and network of Distributors are somehow associated with or approved by Edible Arrangements, which campaign has escalated and continues to steadily escalate." |
| ¶ 126: "1-800-Flowers.com and 800-Flowers have created confusion among consumers by, upon information and belief, improperly using Edible Arrangements' EDIBLE ARRANGEMENTS Mark in the | ¶ 63: "Upon information and belief, the 18F Defendants have selected the EDIBLE Marks as a keyword that would trigger advertisements of its brands, including Harry and David, Shari's Berries, Moose Munch, The |

| | |
|---|---|
| keyword advertising associated with 1-800-Flowers.com's domain, www.fruit bouquets, with every major search engine on the Internet." | Popcorn Factory, Cheryl's Cookie, 1-800-Flowers, 1-800-Baskets.com, Simply Chocolate, and FruitBouquets.com." |
| ¶ 128: "As shown in the following images, when a consumer inputs the EDIBLE ARRANGEMENTS Mark into Google, Yahoo! Or Bing, the search results include—as the second entry—a paid advertisement for 1-800-Flowers.com's Infringing Website." | ¶ 66: "When a consumer enters the EDIBLE Marks as a search term, Defendants infringing ads and links to the related websites appear on the results page." |

## IV.    The District Court Granted Summary Judgment Against All Of EA's Claims And Entered Final Judgment

On June 5, 2023, the parties cross-moved for summary judgment. EA moved only on unclean hands. Dkt. 285.[15] 18F sought judgment against *all* of EA's claims, specifically stating "EA cannot establish any fact of harm or causation concerning its money damages and punitive damages allegedly stemming from its claims and causes of action in its Second Amended Complaint." Dkt. 282-1 at 2. 18F's memorandum

---

[15] EA did not move on the issue of infringement, but claims in its Opening Brief that 18F "caused significant confusion among consumers" and was "directing business away from" EA. Op. Br. at 20. EA cites *only* its Second Amended Complaint and *no record evidence. Id.* No evidence in the summary-judgment record establishes any actionable consumer confusion.

further emphasized that "*all* of EA's trademark and unfair competition claims, *and its contract claim*, require proof of harm, causation, and a calculation of damages" and EA "*failed to adduce evidence for them*, or to show a fact of harm or damage, or to show causation." Dkt. 282-2 at 30–31 (emphasis added). 18F further pointed out that "[b]ecause the record is devoid of evidence establishing any of the supposed harms recited in its initial disclosures, *complaint*, and interrogatory responses, much less evidence tying any harm specifically to 18F's actions, *each and every theory* EA proposes for money or punitive damages fails" and that "[t]he Court therefore should enter summary judgment against them." *Id.* at 30 (emphasis added).

The District Court acknowledged 18F moved for summary judgment against *all* of EA's claims—including the Count VII breach-of-contract claim—enumerating 18F's arguments as to why the Court "should enter summary judgment rejecting Plaintiffs' claims…." Dkt. 377 at 14.[16]

---

[16] It further recognized 18F sought summary judgment on *all* claims by referring to 18F's "Motion for Summary Judgment," as contrasted with EA's "*Partial* Motion." *Id.* at 1 (emphasis added).

The District Court entered judgment against *all* of the Counts in EA's Second Amended Complaint, holding "EA's claims targeted *the same conduct* at issue in the 2014 Litigation" and EA *"fail[ed] to identify facts* that demonstrate how 18F's post-settlement conduct is materially different" from that at issue in the 2014 Litigation. Dkt. 377 at 20, 22. On March 19, 2024, the District Court entered its final judgment, Dkt. 375, from which EA appeals, Dkt. 384.[17]

## SUMMARY OF THE ARGUMENT

This Court should affirm summary judgment for three independent reasons. *First*, EA's Keyword Claims are barred by the Release, ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████    2016 Agreement ¶ 14. Notwithstanding EA's efforts to *plead* that 18F engaged in a "new course of conduct," Dkt. 60-1 ¶ 71, once discovery concluded, the record indisputably showed that EA's present claims are "based on the same

---

[17] EA's Brief could create the impression that Judge Calvert was new to this case when she ruled on summary judgment. Not so. She took over the case at the outset of discovery in April 2022, *see* Dkt. 121, ruled on numerous discovery motions and the parties' motions to dismiss, and was very familiar with the parties, facts, and issues.

alleged wrongful practice that 18F was engaged in in 2014," Dkt. 377 at

20. Restated, EA "fail[ed] to identify facts" substantiating its bare

allegations that 18F had engaged in new conduct. *Id.* at 22. Thus, this

Court should affirm on the independent and sufficient basis of the

Release.

*Second*, *res judicata* bars EA's Keyword Claims. The only *res*

*judicata* element in dispute is whether the Keyword Claims in this case

and those brought in the 2014 Litigation arise out of the same nucleus of

operative fact or are based on the same factual predicate. Indisputably,

they are; in each case, EA claimed 18F infringed, diluted, and competed

unfairly with its trademarks by bidding on them as search-engine

keywords. On appeal, EA argues for the first time that there is a neat

distinction between claims and courses of conduct. That argument both

is barred because EA did not make it below and fails as a matter of law.

Accordingly, this Court should affirm on the independent and sufficient

basis of *res judicata*.

*Third*, 18F moved for summary judgment against *all* of EA's claims

in this case. EA had notice that 18F maintained all of EA's causes of

action failed because EA could not demonstrate any harm or causation or

calculate damages. EA further had notice that its breach-of-contract claim required each of these elements. EA therefore bore the burden of creating a triable issue. It failed to do so. In fact, its summary-judgment opposition failed to submit any evidence concerning any material breach, any harm stemming from such a breach, any causation, or any calculation of damages. The District Court thus correctly concluded that EA failed to substantiate its general assertion that 18F had engaged in new or different conduct, and properly entered judgment against the breach claim.

For all of these reasons, this Court should affirm the summary judgment against all of EA's claims.

## STANDARD OF REVIEW

A district court's interpretation of a contract "is a question of law which [this Court] review[s] *de novo.*" *Southland Distribs. Mktg. Co. v. S&P Co.*, 296 F.3d 1050, 1053 (11th Cir. 2002). The same-cause-of-action *res judicata* element is reviewed *de novo. Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1327 (11th Cir. 2024). EA's argument that the District Court failed to provide notice that it would award summary judgment against EA's breach-of-contract claim is reviewed for an abuse

of discretion. *In re Narcisi*, 691 F. App'x 606, 612 (11th Cir. 2017) (reviewing for "abuse [of] discretion" whether a court "'may sua sponte grant summary judgment so long as the losing party was on notice that it had to come forward with all of its evidence'") (quoting *In re Fisher Island Inv., Inc.*, 778 F.3d 1172, 1195 (11th Cir. 2015)); *see also Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015) ("A district court's decision to grant summary judgment *sua sponte* is reviewed for abuse of discretion."); *Shaw v. Donahoe*, 605 F. App'x 494, 500 (6th Cir. 2015) ("[T]he substance of the decision is reviewed de novo, under normal summary-judgment standards, and the procedural decision for abuse of discretion").

## ARGUMENT

### I.   EA Released Its Keyword Claims In The 2016 Agreement

The District Court correctly held that the 2016 Agreement bars EA's keyword-advertising claims. The agreement resolved two years of litigation with a broadly worded Release, under which ███████

████████████████████████████████████████

████████████████████████████████████████

22

████████████████████████████████████

████████████   2016 Agreement § 14.

This should have ended matters, barring EA from suing 18F for the same claims EA asserted in the 2014 Litigation. Nevertheless, EA brought the present action for claims that consecutive District Court Judges deemed "identical" to and "the same" as those previously asserted. Dkt. 39 at 12, 14 (Jones, J.) (holding the suits were "substantively identical" and "essentially identical"); Dkt. 377 at 20 (Calvert, J.) ("EA brings the same claims based on the same alleged wrongful practice that 18F was engaged in in 2014."). The "identical" claims now at issue are unquestionably barred by the Release, which is why 18F prevailed on this defense at summary judgment. Dkt. 377 at 20 ("These claims were released because they arise out of the same 'facts and matters' that occurred before the 2016 Agreement, and they were asserted in the 2014 Litigation.").

The Release bars EA's claims whether this Court deems the provision unambiguous or whether the Court construes the 2016 Agreement according to Georgia's rules of contract interpretation. Either way, EA's claims are barred.

23

Nor can EA evade the Release by artfully splicing 18F's conduct into "before-settlement" keyword bidding and "after-settlement" keyword bidding. In EA's view, the parties ended two years of litigation with a settlement (and a ██████████████████████████) that sparked new litigation *the next day*. But this ignores reality: as the District Court found, 18F was bidding on EA's terms before the 2014 litigation, during settlement, after settlement, and to present. The parties understood this, and their understanding is reflected in a provision of the 2016 Agreement under which ████████████████████████████████ ████████████████████████████████████████████████ ████████████ 2016 Agreement ¶ 5. Nor did 18F's 2019 acquisition of a new subsidiary, Shari's Berries, change the status quo; the 2016 Agreement ██████████████████████████████████████████████ ████████ *Id.* ¶¶ 14, 18.

### A. The Release Unambiguously Bars Claims "Arising Out Of" Matters Asserted In The 2014 Litigation

The plain terms of the Release bar EA's claims. *See Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017) ("When interpreting a contract, the language must be afforded 'its literal meaning and plain ordinary words given their usual significance.'")

24

(quoting *Unified Gov't of Athens-Clarke County. v. McCrary*, 280 Ga. 901, 635 S.E.2d 150, 152 (2006)). The Release covers



"Arise" means "to originate; to stem (from) … to result (from)." Black's Law Dictionary (12th ed. 2024); *see also Grange Mut. Cas. Co.*, 861 F.3d at 1231 ("Dictionaries may supply the plain and ordinary meaning of a word.") (cleaned up). Thus, EA released 18F from claims predicated on matters that "stem" or "result" from matters asserted in the 2014 Litigation. Because 18F's keyword-bidding practices as of 2020

"stem" or "result" from its keyword-bidding practices in 2016, they form a continuous course of conduct that was released.

Yet here, "EA brings the same claims based on the same alleged wrongful practice that 18F was engaged in in 2014." Dkt. 377 at 20. As the chart, *supra* at Part III, shows, in the 2014 Litigation, EA asserted claims for trademark infringement, unfair competition, and dilution under the Lanham Act based on 18F's and its subsidiaries' campaign to bid on EA's marks as keywords. EA's present claims thus "aris[e] out of" matters at issue in the 2014 Litigation, as EA reasserts the "same claims." Dkt. 377 at 20.

Accordingly, the plain terms of the Release bar EA's claims.

## B.    Binding Precedent Confirms The Release

Georgia courts, and this Court applying Georgia law, have rejected other plaintiffs' claims based on releases strikingly similar to the one here. In *Kobatake v. E.I. DuPont De Nemours & Co.*, this Court applied Georgia law to hold that plaintiffs had released claims against a defendant when the plaintiffs' claims involved the same product at issue in a precursor suit against the defendant. 162 F.3d 619, 624–25 (11th Cir

1998). The claims involving the product were released by the terms of a settlement agreement that resolved the first suit:

> [Plaintiff] … releases and discharges [defendant] … from any and all liability, claims, demands, damages or rights of action (hereinafter referred to as "claims") ... *arising from the beginning of time to the present*, including but not limited to (1) any and all claims arising from or allegedly *arising from or in any way related to [plaintiff's] use of Benlate* or any Benomyl-containing fungicide; (2) any and all claims arising from or allegedly arising from or in any way related to Benlate or any Benomyl-containing fungicide or any constituents thereof, and (3) *any and all claims which might have been alleged, or which were alleged, in the Civil Action.*

*Id.* at 623 (first and third alterations in original) (emphases added). Thus, when the plaintiff later sued for injuries stemming from the use of the product in question (Benlate), "the claims raised by plaintiffs in [the subsequent actions] [we]re barred by the release[]." *Id.* at 627; *see also id.* at 624 ("[T]he releases could not be more plain; plaintiffs gave up all rights to seek damages from defendants in connection with their use of DuPont's Benlate product and agreed that the release represented the parties' entire agreement.").

The Release here is strikingly similar to that in *Kobatake*. Like the *Kobtake* release, the Release here ████████████████████████████ ████████████████████████████████████ 2016 Agreement ¶ 14. It

27

did not matter in *Kobatake* that the original plaintiffs released claims "arising from the beginning of time to the present" (i.e., up to the date of the settlement agreement). The later suit "ar[ose] from" and "related to" the defendants' use of the product. 162 F.3d at 624. Thus, like the release in *Kobatake*, the Release here bars claims *stemming from matters at issue* in the 2014 litigation. *See also United States v. Aetna Cas. Ins. Co.*, 921 F.2d 741, 742 (8th Cir. 1990) (affirming dismissal of contractor's claims against subcontractor for payments made to third parties following a release barring claims, such as the post-release payments, "arising out of" the dispute that precipitated settlement); *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1097 (3d Cir. 1988) ("The language of the release is clear and unambiguous and was obviously meant to put an end to all disputes … arising out of the franchise agreement[.]")).

The same was true in *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814 (11th Cir. 2010). There, this Court barred a plaintiff-physician from asserting tortious interference and defamation claims based on defendant-insurers' failure to timely pay premiums. *Id.* at 821. In a prior action, a class of physicians had sued the insurers for breach of contract based on the insurers' failure to timely pay premiums. *Id.* at

28

817–18. The prior action ended in a settlement agreement that included a release like the Release here:

> [T]he "Released Parties" … shall be released and forever discharged … from any and all causes of action … arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, events … or other matters referenced in the Action, or addressed in this Agreement ….

*Id.* at 817 (alterations in original). In holding the *Thomas* plaintiff's claims barred, this Court noted "the settlement agreement broadly defines released claims to include claims that are related to matters addressed in the class action or settlement agreement." *Id.* at 821–22. The plaintiff's "tort claims [we]re related to the concerns addressed in the class action." *Id.* at 822.

And in *In re Managed Care*, this Court held that a release barred claims based on post-settlement acts in a conspiracy that was the subject of an earlier settled lawsuit. 756 F.3d 1222 (11th Cir. 2014). In the earlier suit, a group of physician-plaintiffs brought RICO and antitrust claims against healthcare insurance companies alleging a conspiracy to underpay them. *Id.* at 1235–36. That suit was settled with an agreement

that included a "broad release." *Id.* at 1236.[18] Later, several of the original plaintiffs sued once more, attempting to allege "new claims [based] on certain conduct post-dating the Effective Date" of the settlement. *Id.* These plaintiffs tried EA's argument: "that the asserted claims could not have been brought as part of [the first suit] and, therefore, did not arise prior to the Effective Date of the Settlement Agreement." *Id.* at 1231.

The district court in *In re Managed Care* held the new claims were barred, and this Court affirmed, holding the release from the first suit barred the post-settlement RICO and antitrust claims because those claims targeted new acts in a continuous course of conduct:

---

[18] The release read as follows:

> [Released Parties shall be released] from any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each a "Claim"), *arising on or before the Effective Date*, that are, were or could have been asserted against any of the Released Parties by reason of, *arising out of*, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in the Actions....

756 F.3d at 1226 (alteration in original; emphasis added).

[T]hese claims could have been asserted at the time of the Effective Date, since all facts necessary to state a cause of action had occurred long before the Settlement Agreement took effect. The fact that Appellants seek to base the new claims on certain conduct post-dating the Effective Date does not change this conclusion. Because they merely constitute a continuation of the conspiracy alleged in [the first case], [defendant]'s purported bad acts are best seen as new, overt acts within an ongoing conspiracy, rather than new claims in and of themselves.

*Id.*

Several factors were key to this Court's reasoning: (1) the plaintiffs were "aware" of the ongoing conspiracy at the time of the settlement, *id.* at 1235; (2) the RICO and antitrust claims "arose out of" the claims in the first suit because they "echo[ed] the earlier allegations," *id.* at 1236; and (3) the newly alleged "bad acts [we]re best seen as new, overt acts within an ongoing conspiracy, rather than new claims," *id.* The same is true here: (1) EA ███████████████████████████████████ ████████████, *see supra* Part II.B.; (2) the present claims "echo the earlier allegations" because they are the same claims, *id.* at Part III; and (3) even the most recent acts alleged by EA merely continue those EA itself describes as a "*campaign* to intentionally imitate and infringe the EDIBLE Marks ... which [] *has escalated and continues to steadily*

31

*escalate*," Dkt. 94-1 ¶ 43 (emphasis added).[19] Thus, in its own words, EA has admitted that its claims in this case arose out of the matters addressed in the 2016 Agreement and the Release.

EA distorts *In re Managed Care*'s holding. Op. Br. at 26–27. EA's reading ignores the language of the release at issue. A look at that provision corrects EA's distortion and dooms EA's case.

To be sure, *In re Managed Care* held the plaintiffs' ERISA claims were not barred by the release. This is so because the ERISA claims did not *accrue*—i.e., the ERISA claims' elements did not develop—until *after* the settlement's effective date. *Id.* at 1238 ("Because ERISA claims ... could not have been asserted on the Effective Date, the District Court erred [in holding the claims barred]."). But that was decisive because, *critically*, the release covered only claims "arising on or before the Effective Date." *Id.* at 1226.

The Release here is different. It contains no such limitation to claims "arising on or before" settlement. The "arising" language in the

---

[19] This "campaign" allegation comes from the Second Amended Complaint in the present case. Dkt. 94-1. But EA used the *exact same* language in its 2014 Complaint. Dkt. 281-10 ¶ 118. *This underscores that EA has consistently viewed and treated 18F's conduct as continuous.*

Release does not govern when the claims must accrue; instead, it requires a causal link between barred claims and "*facts and matters* occurring prior to the execution." 2016 Agreement ¶ 14.[20] A claim may arise out of, or stem from, facts and matters occurring before settlement, even if the claim does not accrue before settlement. Such is the case here: EA's keyword-bidding claims arise out of 18F's keyword bidding practices, which are facts and matters that "were asserted" in 2014. 2016 Agreement ¶ 14.

In fact, in *In re Managed Care*, this Court acknowledged the distinction between claims arising before settlement and claims arising out of facts occurring before settlement. The Court left undisturbed the district court's conclusion that "the ERISA claims ar[o]se out of the facts, acts, [etc.]," of the first litigation, even if the *claims* did not "aris[e] on or before" settlement. *In re Managed Care*, 756 F.3d at 1237. And so, if the release there contained the same language as the Release here, *all* of the

---

[20] In fact, the Release provides that the causal link between facts and claims may be *indirect*, since an additional "matter, act, omission, cause, or event" is interposed between "claims" and "facts and matters occurring prior." *See* 2016 Agreement ¶ 14 ("… from any claims … *by reason of any matter, act, omission, cause, or event whatsoever* arising out of facts and matters occurring prior to the execution of this Agreement ….") (emphasis added).

plaintiffs' claims in *In re Managed Care* would have been barred, as they are here.

Likewise, Georgia appellate courts have read similar releases to bar plaintiffs' claims. In *Dennis v. City of Atlanta*, the Georgia Court of Appeals held the plaintiff's claims barred because a settlement "release[d] and forever discharge[d] [the city] … from any and all actions … which [Releasors] may have or which may hereafter accrue, in any way resulting from *or arising out of any incident referenced in and/or any allegations brought or which could have been brought in the [prior action]*." 751 S.E.2d 469, 471, 324 Ga. App. 659, 660 (2013) (emphasis added). Given this provision, the court held the claims of the later complaint had been released, "*even if some of the claims had not yet accrued at the time of the settlement*" because the new allegations "*ar[o]se*

*out of matters referenced in the 2006 complaint.*" *Id.* at 473, 324 Ga. App. at 663 (emphasis added).

Accordingly, binding opinions of this Court and Georgia courts of appeal have read strikingly similar releases as barring plaintiffs' subsequent claims.

## C.    Georgia's Rules Of Construction Mandate Release

The terms of the Release here are unambiguous, but even if they were not, Georgia's rules of construction confirm that the Release bars EA's claims.[21] *See Ga. R.R. Bank & Tr. Co. v. Fed. Deposit Ins. Corp.*, 758 F.2d 1548, 1551 (11th Cir. 1985) ("In interpreting a contract that is controlled by Georgia law, the rules of contractual construction as expounded by the Georgia courts are properly applicable in federal court."); *Woody's Steaks, LLC v. Pastoria*, 584 S.E.2d 41, 43 (Ga. Ct. App. 2003) (holding courts "must" apply rules of construction to resolve ambiguity) (citing O.C.G.A. § 13-2-2). Three rules apply: (1) the "whole contract" canon, O.C.G.A. § 13-2-2(4); (2) the requirement of the

---

[21] Of course, if this Court deems the terms unambiguous, as Judge Calvert did, "the contract must be enforced as written." *Ryan v. State Farm Mut. Auto. Ins. Co.*, 261 Ga. 869, 413 S.E.2d 705, 707 (1992). The rules of construction are a stopgap for ambiguity.

construction that "goes most strongly against the party ... undertaking the obligation," O.C.G.A. § 13-2-2(5); and (3) the "cardinal" rule of contract construction—the "intent of the parties." *Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1226 (11th Cir. 2002) (quoting *Sheridan v. Crown Cap. Corp.*, 251 Ga. App. 314, 316, 554 S.E.2d 296, 299 (2001)). These rules mandate release.

### 1.    The "Whole Contract" Canon Supports Release

Read as a whole, the 2016 Agreement ████████████████████████ ██████████████████████████████ In Georgia, "all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred." *Municipal Elec. Auth. v. Gold-Arrow Farms, Inc.*, 276 Ga. App. 862, 866, 625 S.E.2d 57, 61 (Ga. Ct. App. 2005); *see also* O.C.G.A. § 13-2-2 (codifying the "whole contract" canon).

Several provisions read in conjunction with the Release make clear that the parties intended to release 18F's ongoing keyword bidding. To start, ██████████████████████████████ ██████████████████████████████ ██████████████████████████████

2016 Settlement Agreement ¶ 3 (emphasis added). That issue ██

████████████████████████████ *Id.*

Paragraph 5 is ██████████████████████████████████



2016 Agreement ¶ 5. ████████████████████████████

This illuminates the Release. If EA wanted to prohibit 18F from

bidding on "edible" keywords, it could have bargained for that

---

[22] The District Court held it "undisputed," despite EA's evidentiary objections, that 18F sought approval from the FTC, and that approval was withheld. Dkt. 377 at 4; *id.* at 23 ("18F sought approval from the FTC and the request was not approved. As a result, 18F continued bidding on Edible's trademarks as search engine keywords."). EA does not squarely challenge this holding on appeal, *but see* Op. Br. at 19 n.3, and if it did, the court's decision to admit the evidence would be reviewed for abuse of discretion. *Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 (11th Cir. 1998).

prohibition. It did not. Instead, EA ████████████████████████

████████████████████████████—showing the parties

negotiated over the same conduct at issue in this case. *See Augustine*

*Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir.

1999) ("Augustine had clear knowledge at the time of the Settlement

Agreement that Progressive was producing and marketing the [products]

at issue in the first suit and the Settlement Agreement, and it was likely

obvious that the production and marketing would not cease the instant

the Settlement Agreement was signed.") ████████████████████

████████, 18F was free to (and did) continue bidding. Dkt. 377 at 23.

As the District Court determined, 18F's continued keyword bidding was

"anticipated and permitted." *Id.*

EA tries to skirt this conclusion by arguing keyword bidding "was

reserved for a potential future agreement." Op. Br. at 8. EA cites *no*

evidence for this proposition because there is none; the FTC did not

consent to any such future agreement. Moreover, the 2016 Agreement

precludes EA from relying on this "potential future agreement" with a merger clause:



2016 Agreement ¶ 17.

Further, the 2016 Agreement expressly  2016 Agreement

¶¶ 14, 18. This undercuts EA's argument that the Release was intended only to cover instances of keyword bidding up to the moment of settlement. If that were so, it would nullify the provision in which the

 *Id.* ¶

18 (emphasis added).

Under Georgia law, this Court must read all provisions as meaningful, and it must read the 2016 Agreement as a "whole contract."

That reading yields only one conclusion: the parties intended to settle EA's keyword-bidding claims for good.

### 2. Construing Any Ambiguities Against EA Supports The Release

If the Court determines the Release is ambiguous, Georgia law requires the Court to construe it against EA. O.C.G.A. § 13-2-2(5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred"). Here, the Release is an undertaking that binds EA, and it should be construed against EA.

This rule makes especially good sense in the context of a release. When the terms of a release are unclear, they should be construed against the releasor. *See, e.g.*, *Augustine Med.*, 194 F.3d at 1373 ("[I]t is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any rights that they wish to maintain beyond the date of the settlement [] agreement."); *Hatco Corp. v. W.R. Grace & Co Conn.*, 59 F.3d 400, 406 (3d Cir. 1995) ("The burden of proof rests on the releasor to establish that general language in the document was meant to be limited or otherwise does not represent the intent of the parties.") (cleaned up) (applying New York law); *Johnson, Drake & Piper,*

*Inc. v. United States*, 531 F.2d 1037, 1047 (U.S. Ct. Cl. 1976) ("[N]o exception to this rule should be implied for a claim whose facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation."); *Three Rivers Motors v. Ford Motor Co.*, 522 F.2d 885, 895 (3d Cir. 1975) ("The general words ... indicate[] a clear intent to leave nothing open and unsettled between the parties. There is not the merest suggestion of a reservation of rights."). In short, a releasor may, and therefore *must*, reserve individual claims.

EA did not. Instead, the parties ████████████████████████ ████████████████████████████████████████████ Dkt. 377 at 23. When that conditioned failed, there was no provision preventing 18F from bidding—to the contrary, that conduct was unambiguously released.

### 3.    A Full Release Was The Intent Of The Parties

While these canons inform the meaning of the Release, the Court need only recall the context in which the 2016 Agreement was executed to vindicate the "cardinal" rule of construction: the "intent of the parties." *Info Sys. & Networks Corp.*, 281 F.3d at 1226. As described above, bidding on competitors' marks as keywords is standard practice in the gifting

industry. *See supra*, Statement of the Case Part I.A. That is the *status quo* which, in 2016, following two years of litigation,  . 2016 Agreement ¶ 10; Dkt. 282-12 at 59:4–11; Dkt. 357-4 at 224:6–225:6; *see also* 2016 Agreement ¶ 3 (

).

, *not* so that EA could sue 18F the day after the Settlement Agreement was signed.

Consistent with this understanding, after the parties executed the 2016 Agreement, EA's founder and CEO, Tariq Farid,

The plain terms, the canons of construction, and common sense all weigh in favor of release. That was the intent of the parties, which this Court must uphold. *Glazer v. Crescent Wallcoverings, Inc.*, 451 S.E.2d

509, 512 (Ga. Ct. App. 1994) ("[T]he goal of the court is to look for the intent of the parties.").

### D. EA Cannot Plead Around A Release That Encompasses Its Amended Allegations

EA seeks to avoid its obligations under the Release with a two-part argument. First, EA contends the Release was not forward-looking, but settled only claims "based on pre-settlement facts." Op. Br. at 20. Second, EA insists it only seeks to hold 18F liable for acts post-dating the 2016 Agreement, which reflect changed circumstances not contemplated in the Release. *Id.* at 10.

EA's first argument ignores the Release's plain text, a reading based upon the whole contract, and common sense.[23] The Release does not say what EA wants it to say: that it bars only claims "based on pre-settlement facts." Op. Br. at 20. The Release ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[23] EA accuses Judge Calvert of "ignoring the Settlement Agreement's plain language," Op. Br. at 17, but Judge Calvert quoted the Release in full, analyzed its unambiguous terms, and arrived at the same conclusion as Judge Jones: The Release bars future lawsuits predicated on the same conduct at issue in the 2014 Litigation—exactly the lawsuit EA filed here.

██████████ 2016 Agreement ¶ 14. As discussed, 18F's keyword-bidding practices as of 2020 "stem" or "result" from its keyword-bidding practices in 2016. Dkt. 377 at 20 ("These claims were released because they arise out of the same 'facts and matters' that occurred before the 2016 Agreement, and they were asserted in the 2014 Litigation."). The conditional (now-inoperative) keyword-bidding provision confirms that the parties considered a prohibition covering that conduct specifically, but they didn't include one in the contract.

Even if EA were correct that the Release *might* be read in the way EA suggests, that would make the provision ambiguous, in which case Georgia's rules of contract construction, discussed above, would mandate a reading in favor of release. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 773 (11th Cir. 2011) ("An ambiguity exists … when the plain words of a contract are fairly susceptible of more than one meaning.").

EA's second argument suggests that its case is limited to 18F's keyword bidding following 18F's 2019 acquisition of its subsidiary Shari's Berries, such that the accused conduct post-dates the 2016 Agreement. This argument fails because, in the first place, Shari's Berries' keyword

bidding arises out of matters at issue in the 2014 Litigation (namely, 18F and its subsidiaries' bidding on "edible" keywords), and such conduct was released.

Moreover, the 2016 Agreement anticipated the possibility that the parties' business activities might one day include future subsidiaries; the Agreement ███████████████████████████████████████ ████████████████████████ 2016 Agreement ¶¶ 14, 18. EA's metaphysical argument about the individualized nature of infringements is beside the point; the parties contemplated the possibility of such issues and resolved them with a settlement. *See Augustine Med.*, 194 F.3d at 1371–72 ("While issues of patent infringement do give rise to individual causes of action, those individual causes of action cannot override the unambiguous language of a Settlement Agreement that releases all possible future claims related to the matters settled by the agreement.").

Because EA's keyword-bidding claims are barred by the Release, this Court should affirm the District Court on this independent basis.

## II.    The Keyword Claims Are Barred By *Res Judicata*

As a separate basis for granting summary judgment, the District Court correctly held that EA's Keyword Claims are barred by *res*

45

*judicata*, which applies when a prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties; and (4) involved the same causes of action. *TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020). The first three elements are not disputed.

The fourth element is "whether [this] case arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as [the] former action." *TVPX ARS, Inc.*, 959 F.3d at 1325 (citation omitted); *id.* (holding "res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact") (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269 (11th Cir. 2002)). This "analysis centers on whether the primary right and duty are the same." *Id.* (citation omitted). As this Court has emphasized, "[f]actual allegations do not need to be identical to arise out of the same nucleus of operative fact. The nucleus is the core, not the core and every layer, crack, and fissure." *Rodemaker*, 110 F.4th at 1330 (11th Cir. 2024).

Here, EA asserts claims for trademark infringement, unfair competition, and dilution—the very same claims it asserted in the 2014

Litigation based on the very same factual predicate—i.e., bidding on EA's marks as search-engine keywords. Dkt. 281-10. The causes of action here and in the 2014 Litigation "*are substantively identical.*" Dkt. 39 at 12 (Jones, J.) (emphasis added); *id.* at 14; *see also* Dkt. 377 at 26 (Calvert, J.) ("These claims are substantively identical to the 2014 Litigation and arise out of the same nucleus of operative fact.").

EA attempted to avoid *res judicata* by pleading "changed circumstances," contriving allegations of new post-settlement conduct, including: ████████████████████████████████████████ ████████████████████████; and (3) Google's search-engine results pages changed. *See* Dkt. 94-1 ¶¶ 49–57. But EA "fail[ed] to cite any evidence supporting [these naked allegations] so the [District] Court … reject[ed] [them]." Dkt. 377 at 22 n.3. Even now, EA fails to demonstrate how 18F's conduct allegedly changed, instead offering only bare assertions or citations to allegations in EA's complaint. *See, e.g.,* Op. Br. at 32, 37–38 ("Because Edible's keyword-bidding claims are based on 18F's post-settlement conduct, they constitute new, independent causes of action based on new conduct … .") (uncited). Such assertions are

47

inadequate when EA bears the burden of producing evidence to substantiate them.

Contrary to EA's unsupported statements, the summary-judgment record shows ██ █████████████ ████████████████████████ ████████████████████████. *See supra*, Statement of the Case, Part II.B.; *see also* Dkt. 282-4 ¶¶ 3–5; Dkt. 39 at 13. Specifically, for example, 18F's Senior Director of Online Marketing testified ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████ Dkt. 282-4 ¶ 3, 5. ██████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████ *Id.* ¶ 5. EA knew this. Dkt. 282-7 at 30:14–16; 51:3–17; 52:14–21 (agreeing █████████████████████ ███████████████████████████████████████████████████ ████████ ); *see also* Dkt. 357-4 at 224:6–225:6. EA itself characterizes 18F's uninterrupted keyword bidding as a ""*campaign* to intentionally imitate

and infringe the EDIBLE Marks ... which [] *has escalated and continues to steadily escalate*." Dkt. 94-1 ¶ 43.[24]

The Shari's Berries acquisition did not change this. EA's founder and CEO admitted that even before 18F acquired Shari's Berries' assets,

████████████████████████████████████████████████████

██████████████████████████████████ Dkt. 282-12 at 159:9–13; 163:14–164:11. EA tried to buy Shari's Berries for this reason. Dkt. 282-12 at 167:16–168:18. Mr. Farid further conceded there is no basis apart from Shari's Berries "edible"-term keyword bidding to believe the Shari's Berries acquisition dramatically changed marketplace conditions.[25] Dkt. 282-12 at 237:14–239:21.

Despite EA's attempts now to contend 18F's post-settlement actions constitute a different course of conduct not at issue in the 2014 Litigation, *no* change occurred in 18F's conduct or the factual predicate giving rise to EA's causes of action in the Keyword Claims, as the District Court

---

[24] Of course, 18F disputes any allegation that 18F infringes EA's marks.

[25] Regardless, EA "release[d] ... [18F] and its parents, subsidiaries and companies controlled by [18F]," 2016 Agreement ¶ 14, and the Agreement "inure[s] to the benefit of ... the Parties and their current and *future ... subsidiaries*," *id.* ¶ 18 (emphasis added).

49

correctly held. Dkt. 377 at 26. The 2014 Litigation keyword claims and the current Keyword Claims are "essentially identical," Dkt. 39 at 14. Restated, the "[c]auses of action [in the 2014 Litigation and this case] share a nucleus of operative fact [because] the same facts are involved in both cases, so that the present claim[s] *could have been effectively litigated with the prior [case]*." *Rodemaker*, 110 F.4th at 1330 (emphasis added). Because EA's present Keyword Claims could have been effectively litigated in the 2014 Litigation, they are *res judicata*.

Unable to demonstrate 18F engaged in any new conduct, EA contends Judge Calvert's summary-judgment ruling was "a departure from Judge Jones's earlier [motion-to-dismiss] ruling that certain claims in EA's First Amended Complaint could not be barred by *res judicata*. Op. Br. at 23–24 (citing Dkt. 58 at 8–9). But Judge Jones's ruling that EA "cure[d] [a] fatal pleading flaw" at the motion-to-dismiss stage does not absolve EA of its obligation to come forward with evidence at the summary-judgment stage.[26] *See, e.g.*, *Sanchez v. Guzman*, 105 F.4th

---

[26] The Order from Judge Jones that EA cites references the fact that 18F did not own Shari's Berries until three years after the 2016 Agreement. *See* Dkt. 58 at 8-9. Even setting aside that this is not a basis on which to conclude that 18F's conduct of bidding on "edible" terms as keywords changed, the summary-judgment record shows Shari's Berries

1285, 1299 (10th Cir. 2024) ("Plaintiffs' citation to the portion of the record involving the district court's resolution of the motions to dismiss does not help them carry their summary judgment burden."); *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) ("[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.").

Beyond its attempt to conflate the District Court's rulings at distinct procedural moments in this case, EA attempts on appeal to avoid *res judicata* by asserting an argument it never made before the District Court: namely, that causes of action are different from courses of conduct. Op. Br. at 27.

Because EA did not make this argument before the District Court, this Court should disregard it. "It is well-settled that [this Court] will generally refuse to consider arguments raised for the first time on appeal." *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) (internal citations omitted).

---

was bidding on "edible" terms as search-engine keyword for years *before* 18F acquired its assets *and* that EA was aware of this bidding. Dkt. 282-12 at 159:9–13; 163:14–164:11; 167:16–168:18. Thus, the summary-judgment record shows *no* conduct changed, contrary to EA's hollow allegations on which Judge Jones based his decision.

Regardless, claim preclusion clearly applies. The Fifth Circuit's decision in *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 400 (5th Cir. 2009) is especially instructive. In that case, Oreck asserted Lanham Act claims that the parties settled, and that the court dismissed with prejudice. Shortly thereafter, Oreck filed suit once again asserting Lanham Act claims with respect to its competitor's statements regarding a new product, ultimately based on the claim at issue in the prior case. The Fifth Circuit affirmed a summary dismissal of the second suit based on claim preclusion. *Oreck*, 560 F.3d at 404. There, as here, *identical* claims were at issue, and because those claims were dismissed with prejudice in the earlier suit, *res judicata* barred them.

Other courts have reached similar conclusions under similar circumstances. *See, e.g.*, *Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Machs. Corp.*, 110 F.4th 106, 119 (2d Cir. 2024) (applying *res judicata* to bar trade secret claims when prior suit involved same factual predicate; holding plaintiff's assertion that different facts existed in second suit "suggests only that the respective complaints depend on different shadings of the facts …. [and] [t]hose subtle differences … are not enough to overcome the many similarities….") (internal quotation

52

marks and citation omitted); *Denver Homeless Out Loud v. Denver, Co.*, 32 F.4th 1259, 1275 (10th Cir. 2022) (holding *res judicata* precluded claims regarding acts that "post-date[d]" prior judgment when plaintiffs alleged "multi-year custom and practice"; "the event material to our preclusion analysis is Denver's ongoing implementation of this custom— not the discrete activities occurring at each sweep"); *Silberstein v. Fox Ent. Grp., Inc.*, 732 Fed. Appx. 517, 519–520 (9th Cir. 2018) (holding trademark-infringement claim precluded notwithstanding plaintiff's contention that new facts differentiated the present case from a past suit because plaintiff had obtained supplemental registration of her trademark); *Escamilla v. M2 Tech., Inc.*, 657 Fed. Appx. 318, 319 (5th Cir. 2016) (holding trademark-infringement suit barred by *res judicata*); *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1350 (Fed. Cir. 2014) (holding patent-infringement claim precluded when earlier suit between the parties entailed the same nucleus of operative fact; rejecting plaintiff's argument "that [an intervening] patent reexamination created a new cause of action because the reexamined patent claims are substantially different from the claims in the original … patent.").

The cases on which EA relies are readily distinguishable, and do not support EA's argument that *res judicata* cannot apply to a course of conduct that occurs after a judgment, regardless of whether it is a continuation of conduct previously at issue. In *Lawlor*, for example, the Supreme Court noted "[i]n the interim [between the 1943 judgment and the case at bar] ... there was a *substantial change* in the scope of the defendants' alleged monopoly" and "there [we]re new antitrust violations alleged [in the later action]—deliberately slow deliveries and tie-in sales, among others—not present in the former action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (emphasis added). By contrast, EA failed to show "18F's post-settlement conduct is materially different" from that at issue in the prior litigation. Dkt. 377 at 22. In fact, it has alleged 18F has continued the same "campaign," and that campaign "continues to steadily escalate." Dkt. 94-1 ¶ 43.

EA's reliance on *Lucky Brand Dungarees* is similarly unhelpful, as the Supreme Court expressly noted that "the two suits here were grounded on *different conduct*, involving *different marks*" and highlighted that the later action "involved different marks, different legal theories, and different conduct ...." *Lucky Brand Dungarees, Inc. v. Marcel*

54

*Fashions Grp., Inc.*, 590 U.S. 405, 415 (2020) (emphasis added). Here, the marks were the *same*, the legal theories of infringement were the *same*, and (as the District Court found) the underlying conduct was the *same*.[27]

Each of EA's other cited cases is also readily distinguishable. This Court in *Maldonado v. U.S. Attorney General*, 664 F.3d 1369, 1376 (11th Cir. 2011) held that *res judicata* did not apply "when an intervening change in the law created a new ground of removability that was not available ... during the prior proceedings." No such change in law applies here—indeed the law counsels against allowing EA's Keyword Claims to proceed. In *Retractable Technologies, Inc. v. Becton Dickinson & Co.*, 842 F.3d 883 (5th Cir. 2016), the Fifth Circuit noted the plaintiff *lacked notice* before the 2004 settlement that defendant would continue using objectionable advertisements. *Id.* at 899. Here, by contrast, the 2016 Agreement expressly contemplated 18F's continued use of "edible"-

---

[27] *Lucky Brand Dungarees* is further distinguishable because the plaintiff there *won* in the first suit. The Second Circuit reversed the district court's summary judgment for the defendant because "[w]inning a judgment based on the defendant's violation of the plaintiff's rights does not deprive the plaintiff of the right to sue the same defendant again for the defendant's further subsequent similar violations." 779 F.3d at 107. That situation is obviously different from the one here, where EA's claims were dismissed with prejudice.

formative terms in keyword advertising should the FTC not permit a prohibition on such use.

In *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 501 (2d Cir. 2014), the Second Circuit held that "claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." That is exactly the situation here; 18F's identical conduct continued after the 2014 Litigation but did not amount to a new claim.

In *Factory Direct Wholesale*, the later claims that the court allowed to proceed involved advertisements related to *different* product listings than those asserted in the earlier action. *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 911 (N.D. Cal. 2019). Here, the District Court found the underlying conduct was identical.

*In re Managed Care* (discussed in Part II.B., *supra*) also is unhelpful to EA. That case does *not* stand for the proposition that claim preclusion cannot apply to any acts occurring after a judgment in a prior action. Instead, it addresses the narrow issue of "at what point an ERISA claim can be asserted." *In re Managed Care*, 756 F.3d at 1237. This Court found

56

that the plaintiff asserted claims related to "denial or underpayment of benefits following the Effective Date" of the settlement agreement in a prior action, and held that those claims (which relate to a physician's *later* treatment of *different* patients and subsequent denial or underpayment of benefits) were not barred. This is far different from the claims at issue here—which, as the District Court held, relate to *identical* conduct.

While EA suggests that the *McCarthy* treatise supports its position, a closer examination shows that is not the case. The cases in *McCarthy* that EA cites are the readily distinguishable *TechnoMarine* and *Lucky Brand Dungarees* cases discussed above. Further, in the same section EA cites, *McCarthy* (citing *Oreck*) confirms that "[a] prior dismissal with prejudice may trigger claim preclusion" and that this can occur both in and outside the context of a settlement. J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 32:81 (5th ed.).

EA's identical claims were previously dismissed with prejudice, and they are accordingly barred. This Court should affirm on this independent basis.

## III. The District Court Properly Granted Summary Judgment On EA's Breach-Of-Contract Claim

### A. EA Failed To Create A Triable Issue

The District Court properly granted summary judgment against EA's breach-of-contract claim. 18F indisputably moved for summary judgment against this claim; EA failed to respond adequately; and no evidence in the summary-judgment record shows 18F committed a material breach.

18F moved for summary judgment on *all* of EA's claims, including "*its contract claim*." Dkt. 282-2 at 30 (emphasis added). 18F emphasized that EA could not show "harm or causation concerning damages allegedly stemming from any of its claims," Dkt. 282-2 at 9, expressly stating EA's "*contract claim*[] require[s] proof of harm, causation, and a calculation of damages," *id.* at 30 (emphasis added). EA had ample notice of its obligation to respond. "'A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.'" *Williamson v. Ala. Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *11 (quoting *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009)).

58

EA bore the burden of demonstrating a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williamson*, 2023 WL 5287873, at *11 (11th Cir. Aug. 17, 2023) ("When a party moves for *final*, not partial, summary judgment, 'it becomes incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in the moving party's favor.'") (quoting *Case*, 555 F.3d at 1329).

But EA's summary-judgment opposition failed to identify any material breach of the 2016 Agreement, any harm, or any causal link between any alleged breach and any supposed damage. *See generally* Dkt. 323-1. These are essential elements of a breach-of-contract claim under Georgia law. *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014).

Nowhere—not *once*—did EA address breach, or even say the word "breach," in its entire opposition. Not *once* did EA address causation. EA attempted to submit evidence on damages. Dkt. 323-1 at 28–29. But it focused *entirely* on damages allegedly due to *keyword bidding*—which, as discussed above, EA released. *See id.* at 28 (addressing harm suffered

"when a competitor bids on [a company's] branded terms"). EA thus failed to create a disputed issue of material fact.

The District Court correctly held that "EA fail[ed] to cite any evidence" supporting its assertion that 18F had engaged in new or different conduct, Dkt. 377 at 22 n.3, and thus properly entered judgment against the breach claim, *id.* at 27. As EA elsewhere has acknowledged, the District Court "granted 18F's motion for summary judgment *in toto* …." USCA11 Dkt. 16 at 6. This Court should affirm that judgment.

## B.    EA's Contract Claim Fails Regardless Of Whether The District Court Provided Notice

EA raises three challenges to the District Court's judgment regarding the contract claim: (1) neither the Release nor *res judicata* could bar this claim; (2) the District Court violated Rule 56 because it allegedly did not articulate a reason for dismissing the breach claim; and (3) EA lacked sufficient notice that the breach claim could be jettisoned on summary judgment. Op. Br. at 28–29. Each of these arguments fails.

First, EA failed to carry its burden of identifying a genuine dispute of material fact on its contract claim. This failure alone justifies summary judgment.

Second, beyond the District Court stating expressly that "EA fail[ed] to cite any evidence" showing 18F had engaged in new or different conduct, Dkt. 377 at 22 n.3, this Court may "affirm for any reason supported by the record, even if not relied upon by the district court." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020) (internal quotation marks omitted). This includes EA's plain failure to identify a genuine dispute of material fact—in the court below, or even on appeal.

Third, EA clearly had notice of its obligation to create a triable issue on this claim because 18F raised it expressly. Dkt. 282-2 at 30. EA had ample opportunity to present arguments, and it failed to do so. Even if there were an oversight by the District Court, it would be harmless error because EA had notice regardless of the court's actions. *Williamson*, 2023 WL 5287873, at *11 ("[A] failure to give notice can be harmless error when a party is not deprived of the opportunity to present facts or arguments that would have precluded summary judgment.") (citing *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995)). Even now, on appeal, EA fails to identify facts that would create a triable issue. *Restigouche, Inc.*, 59 F.3d at 1213 (affirming summary judgment

because appellant "d[id] not assert on appeal that there exists additional evidence … which would create material issues of fact"); *In re Fisher Island Invs., Inc.*, 778 F.3d at 1195 (holding a party "may not refuse to raise disputed issues before the bankruptcy court then later claim on appeal that disputed issues precluded summary judgment").

Accordingly, the District Court's judgment must be affirmed as to *all* claims.

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the District Court's judgment.

Dated:    October 25, 2024

Respectfully submitted,

/s/ Charles H. Hooker III
Charles H. Hooker III
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

Adam H. Charnes
KILPATRICK TOWNSEND
& STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
(214) 922-7100
*Counsel for Appellees*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a), counsel for the Appellees certify that this brief complies with the spacing, typeface, and style requirements of Rules 32(a)(4)–(6) and that, in keeping with Rule 32(a)(7)(B), this brief contains 12,714 words.

/s/ Charles H. Hooker III
Charles H. Hooker III
Kilpatrick Townsend & Stockton LLP

*Counsel for Appellees*

63

**CERTIFICATE OF SERVICE**

I certify that I caused redacted Appellee's Brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the Appellate CM/ECF system on October 25, 2024. Counsel of record in the case who are registered CM/ECF users, will be served by operation of the CM/ECF system.

/s/ Charles H. Hooker III
Charles H. Hooker III
Kilpatrick Townsend & Stockton LLP

*Counsel for Appellees*